UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ASKIA HILL #331718,

    Petitioner,

               CASE NO. 5:08-CV-14102
v.              HONORABLE JOHN CORBETT O'MEARA
              UNITED STATES DISTRICT JUDGE
WAYNE COUNTY,      HONORABLE MONA K. MAJZOUB
              UNITED STATES MAGISTRATE JUDGE

    Respondent.

_____/

**Respondent's Answer in Opposition to Petition for Writ of Habeas Corpus**

**Relevant Facts and Procedural History**

   Following a jury trial, Petitioner Askia Hill was convicted of one count of assault with

intent to commit murder; carjacking; felon in possession of a firearm; and felony firearm.  In

May 2004, Petitioner was sentenced as a second habitual offender to 13-to-30 years in prison for

the assault and carjacking convictions; 3-to-7 ½ years for the felon in possession conviction; and

to a consecutive 2 years for the felony firearm conviction.  Petitioner was tried jointly with

DeShawn Whitman and Marcus Taylor.[1]  The Michigan Court of Appeals summarized the facts

as follows[2]:

---

[1] The trial prosecutor was John Dakmak.  Trial counsel for DeShawn Whitman was Gabi Silver.
Trial counsel for Petitioner was Robert Elsey.  Trial counsel for Marcus Taylor was David
Cripps.  Whitman was convicted of one count of assault with intent to commit murder;
carjacking; felon in possession of a firearm; and felony firearm.  Taylor was acquitted of all
charges (relating to both shootings).

[2]  Additional facts will be provided as needed.  Respondent objects to Petitioner's statement of
the facts to the extent that the statements are not supported by the record.

Defendants were tried jointly as a result of two shootings on April 6, 2000. Relating to the murder charges, Erwin Wilson was shot and killed in front of 4171 Drexel, in Detroit. The assault with intent to murder and carjacking charges arose out of another shooting, in which Jermaine Davenport, Wilson's cousin, was shot in the neck and his vehicle, a Yukon, was taken. [Whitman and Hill] were acquitted of first-degree murder and the lesser offense of second-degree murder.

The prosecution's theory was that Hill, Whitman, Taylor and a fourth man, were in a black SUV around 10:00 p.m. on April 6, 2000, and shot and killed Erwin Wilson, a street-level drug dealer, in front of 4171 Drexel Street. A few minutes later, the black SUV approached Jermaine Davenport, Wilson's cousin, who was in another SUV parked on the street talking to fourteen-year-old Unique Webster. Someone from the black SUV shot at Davenport and the SUV and chased him, until Davenport's SUV crashed into a parked car and stopped. Davenport got out of his SUV and was shot at by Whitman and the others. Davenport sustained a gunshot wound to the neck, and Davenport's SUV was taken by several of the perpetrators. Davenport walked to the house on Drexel, saw Wilson lying in the street, and saw Roosevelt Walker, a friend of Davenport's with whom Davenport had been earlier. Davenport did not name any perpetrators until well after the shootings. In May 2000, Davenport was charged with Wilson's murder, but the charges were later dropped.

Defendant Whitman's defense theory was that Jermaine Davenport argued with Wilson on the evening in question and was in the SUV from which the shot that killed Wilson was fired. Defendant Hill's defense was that he was not present at either shooting incident, and that Jermaine Davenport, who was involved in drug-dealing along with Wilson, had every reason to lie regarding this case. [*People v. Hill*, unpublished per curiam opinion dated 2/7/06, Court of Appeals No. 256497][footnote omitted]

In July 2004,[3] Petitioner filed a claim of appeal with the Michigan Court of Appeals and later raised the following claims in his brief on appeal:

I.      The trial court's refusal to sever the charges relating to Irwin Wilson, from those relating to Jermaine Davenport, was an abuse of discretion which denied [Petitioner] of a fair trial and due process of law under the Sixth and Fourteenth Amendments.

II.     [Petitioner was denied a fair trial and his constitutional right to present a defense and to due process under the Sixth and Fourteenth Amendments,

---

[3] In July 2004, Petitioner filed with the trial court a motion for new trial. The trial court denied Petitioner's motion in an order dated October 1, 2004. (The motion and order is part of the Michigan Supreme Court No. 130576 material.)

through the trial court's (A) comments and interjections, and (B) limitations upon cross-examination, such that the defense was belittled and unfairly limited in its presentation.

The People filed a brief on appeal.  (People's brief on appeal dated 6/3/05)  On February 7, 2006, the Michigan Court of Appeals issued an unpublished per curiam opinion affirming Petitioner's convictions.  (*People v. Hill*, Court of Appeals No. 256497)

Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, where it appears that he raised the same claims he raised in the Michigan Court of Appeals.  The People filed a brief in opposition.  (People's brief dated 2/28/06)  On September 26, 2006, the Michigan Supreme Court denied Petitioner's application for leave to appeal because it was not persuaded that the questions presented should be reviewed.  (*People v. Hill*, Michigan Supreme Court No. 130576)

In December 2006, Petitioner filed with the trial court a motion for relief from judgment and raised the following claims, as summarized by the trial court: 1) that MCL 770.1; MSA 28.1098 precludes operation of the cause and prejudice standard set forth under MCR 6.508(D)(3)(a); 2) that he was denied effective assistance of appellate counsel, where counsel failed to raise several issues on direct appeal; 3) that the trial court abused its discretion in allowing the introduction of evidence without the laying of proper foundation; and 4) that defendant's right to confrontation was violated when not allowed cross-examine, codefendant Whitman; and 5) that the sentencing guidelines were based on facts that the prosecutor had not introduced into evidence.  The trial court denied Petitioner's motion in an opinion dated April 16, 2007.  (This opinion is part of the Court of Appeals No. 278435 material.)

In June 2007, Petitioner filed a delayed application for leave to appeal with the Michigan

Court of Appeals, appealing the denial of his motion for relief from judgment.  Petitioner argued

that:

I.     The trial court abused its discretion and violated [Petitioner's] constitutional rights of due process, equal protection, and fair trial by allowing state evidence to be introduced without the proper foundation being laid.

II.    It was reversible error for the trial court to allow Mr. Whitman's statements to be heard via Sgt. Abdella in lieu of live testimony before the trier of facts in violation of [Petitioner's] constitutional right to confrontation and his right to a fair trial where Mr. Whitman's testimony was admitted into evidence via Sgt. Abdella without a showing of unavailability and a prior opportunity for cross-examination by [Petitioner] at trial.

III.   The trial court violated [Petitioner's] federal constitutional rights, U.S. Const. Ams V, VI, XIV at sentencing by scoring the statutory sentencing guidelines based on its findings of additional facts which the prosecutor had not charged, which had not been submitted to the jury, and which [Petitioner] had not admitted.

On December 14, 2007, the Michigan Court of Appeals denied Petitioner's delayed application

"for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)."

(*People v. Hill*, Court of Appeals No. 278435)

Petitioner then filed an application for leave to appeal with the Michigan Supreme Court.

On June 23, 2008, the Michigan Supreme Court denied Petitioner's application because

Petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."

(*People v. Hill*, Michigan Supreme Court No. 135648)

In September 2008 Petitioner, pursuant to 28 U.S.C. § 2254, filed a habeas petition and

supporting brief.  Petitioner raises the following claims in his brief:

I.     The trial court's refusal to sever the charges relating to Irwin Wilson from those relating to Jermaine Davenport was an abuse of discretion which

4

denied [Petitioner] a fair trial and due process under the Sixth and Fourteenth Amendments.

II.      [Petitioner] was denied a fair trial and his constitutional rights to present a defense and to due process under the Sixth and Fourteenth Amendments through the trial court's (A) comments and interjections, and (B) limitations upon cross examination such that the defense was belittled and unfairly limited in its presentation.

III.     [Petitioner] was denied effective assistance of appellate counsel as cause for his failure to raise these meritorious claims on direct appeal.

IV.      The trial court abused its discretion and violated [Petitioner's] constitutional rights of due process, equal protection, and fair trial by allowing state evidence to be introduced without the proper foundation being laid.

V.       It was reversible error for the trial court to allow Mr. Whitman's statements to be heard via Sgt. Abdella in lieu of live testimony before the trier of facts in violation of [Petitioner's] constitutional right to confrontation and his right to a fair trial where Mr. Whitman's testimony was admitted into evidence via Sgt. Abdella without a showing of unavailability and a prior opportunity for cross-examination by [Petitioner] at trial.

VI.      The trial court violated [Petitioner's] federal constitutional rights, U.S. Const. Ams V, VI, & XIV at sentencing by scoring the statutory sentencing guidelines based on its findings of additional facts which the prosecutor had not charged, which had not been submitted to the jury, and which [Petitioner] had not admitted.

VII.     [Petitioner] should have been appointed appellate counsel to represent him on first tier review in the Court of Appeals pursuant to the Sixth Circuit's decision based upon *Simmons v. Kapture*, 474 F.3d 896 (2005) that *Halbert v. Michigan*, 545 U.S. 605, 125 S.Ct. 2588 (2005) should be applied retroactively on collateral review.

Respondent now answers the petition and requests that this Honorable Court deny habeas relief for the reasons below. In addition, Respondent asserts any and all available defenses including failure to exhaust state court remedies, the statute of limitations, and procedural default for each claim to which it is applicable. To the extent that any of the alleged trial errors are

meritorious, Respondent asserts that they did not have a substantial impact or influence on the outcome of Petitioner's trial.  Respondent opposes any request for discovery, evidentiary hearings, bond, oral argument, or any other relief.

### Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) altered the standard of review that federal courts must apply when reviewing applications for a writ of habeas corpus.  The AEDPA applies to all habeas petitions filed after the effective date of the act, April 24, 1996.  Because Petitioner's application was filed after April 24, 1996, the provisions of the AEDPA, including the amended standard, apply to this case.

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review that a federal court must utilize when reviewing applications for a writ of habeas corpus:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under 28 U.S.C. § 2254(d)(1), the writ may issue only if one of two conditions is satisfied—the State court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application . . . of clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the

correct governing principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. In *Williams v. Taylor*, 529 U.S. 362, 411 (2000), the Supreme Court stated that:

> [I]n § 2254(d)(1), Congress specifically used the word "unreasonable," and not a term like "erroneous" or "incorrect." Under § 2254(d)(2)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established law erroneously or incorrectly. Rather, that application must also be unreasonable.

Even prior to the enactment of the AEDPA, the Supreme Court stated that a "federal habeas court, should, of course, give great weight to the considered conclusions of a coequal state judiciary." *Miller v. Fenton*, 474 U.S. 104, 112 (1985). The Supreme Court has warned the federal courts against too readily granting habeas relief simply because it disagrees with the state court's decision. In *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003), the Supreme Court stated: "A federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." In *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002), the Supreme Court stated 28 U.S.C. § 2254(d) imposes a highly deferential standard for evaluating State court rulings on habeas review, and "demands that state court decisions be given the benefit of the doubt." The Supreme Court further stated that a "readiness to attribute error is inconsistent with the presumption that state courts know and follow the law." *Woodford*, 537 U.S. at 24.

## Argument I

**Petitioner is not entitled to habeas relief on his first habeas claim because the claim is not cognizable or without merit and because the state court adjudications of this claim were neither contrary to nor an unreasonable application of clearly established Supreme Court precedent or an unreasonable determination of the facts.**

In his first habeas claim, Petitioner alleges that the trial court's refusal to sever the charges relating to Wilson from those relating to Davenport constituted an abuse of discretion which violated his right to a fair trial.  Petitioner raised this claim on direct appeal but the Michigan Court of Appeals rejected it:

> Defendant Hill challenges the trial court's denial of his motion for severance, where the allegations in the two incidents involved different complaining witnesses, different locations, although near, and different times, although close in time.

> This Court reviews a trial court's determination whether severance is mandatory de novo. Review of the trial court's decision to sever related offenses is for an abuse of discretion.

The trial court noted in denying defendant's motion for severance:

> One could certainly argue from a review of the preliminary exam transcripts that the actions at issue, the offenses at issue as reflected in the information are a series of connected acts or acts constituting part of a single scheme or plan. Therefore, I certainly don't believe and I certainly know that severance is not mandated.

> The focus of Mr. Cripps' argument was requesting a . . . discretionary severance pursuant to 6.121(C) and (D). . . .

> Looking at this case, thee [sic] issue is what is the best interest of assuring a fair trial to not only the defense, but also the prosecution. Looking at the parties resources, the potential for confusion or prejudice, the nature of the evidence, convenience of the witnesses, I certainly don't see that severance is necessary to avoid prejudice to any of the substantial rights of any of the defendants.

> Considering the facts which I just articulated, I think it's the best use of resources, to create the least potential for confusion or prejudice to the

parties, to a jury's understanding of the nature of the case, nature of the evidence, convenience of the witnesses, to not have severance in this case.

MCR 6.120 provides:

> (A) Permissive Joinder. An information or indictment may charge a single defendant with any two or more offenses. . . .

MCR 6.121(D), JOINDER AND SEVERANCE; MULTIPLE DEFENDANTS, provides:

> (C) Right of Severance; Related Offenses. On a defendant's motion, the court must sever the trial of defendants on related offenses on a showing that severance is necessary to avoid prejudice to substantial rights of the defendant.

> (D) Discretionary Severance. On the motion of any party, the court may sever the trial of defendants on the ground that severance is appropriate to promote fairness to the parties and a fair determination of the guilt or innocence of one or more of the defendants. Relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of defendants or the complexity or nature of the evidence, the convenience of witnesses, and the parties' readiness for trial.

The trial court did not err in concluding that severance was not mandatory. Two offenses are related if they are based on the same conduct or a series of connected acts. MCR 6.120(B). The prosecution maintains, and we agree, that Erwin Wilson's murder and the assault on Jermaine Davenport, Wilson's cousin, constitute "connected acts" under the court rule. Shortly before Wilson was shot, Davenport was parked in his SUV and saw a black SUV drive by, driven by defendant Whitman, with defendant Hill in the passenger seat and codefendant Marcus Taylor in the back seat. Davenport saw the black SUV stop in front of Unique Webster's house and heard gunshots. The black SUV drove away, but Davenport saw it about five minutes later, at which time he heard gunshots and his vehicle's rear window shattering. Davenport drove off, was pursued, and after crashing into a parked car, got out of his SUV and saw defendants Whitman and Hill and Taylor next to the black SUV. All the men shot at Davenport, he was struck in the neck, and the men drove away in his SUV and the black SUV. The acts happened within minutes, in proximity to each other, and the shooting of Wilson may have been the motive to Davenport's shooting. We conclude that the trial court did not err in concluding severance was not mandatory.

Nor was the trial court's denial of defendant's request for severance an abuse of discretion. The trial court set forth its reasons for denying severance, see quoted excerpt, *supra*, and the record supports its determination. Had the court

granted severance, a second trial would have been necessary, in which the same witnesses would have testified. No risk of confusion of the issues existed because the case was not complex, and there was a close connection between the shootings. We conclude the trial court did not abuse its discretion by denying defendant Hill's motion for severance. [*People v. Hill*, unpublished per curiam opinion dated 2/7/06, Court of Appeals No. 256497][citations omitted]

To the extent that Petitioner alleges a violation of the Michigan Constitution, Michigan Court Rules, or Michigan law, such claims are not cognizable upon federal habeas review. A federal habeas court may only grant habeas relief to a petitioner "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c)(3); 28 § U.S.C. 2254(a), and habeas relief may not be based upon perceived error of state law. *Gilmore v. Taylor*, 508 U.S. 333 (1993); *Estelle v. McGuire*, 502 U.S. 62 (1991); *Lewis v. Jeffers*, 497 U.S. 764 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982).

Petitioner has failed to show a violation of his federal constitutional rights. Improper joinder does not, by itself, violate the federal constitution. Misjoinder rises "to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *United States v. Lane*, 474 U.S. 438, 446, n. 8 (1986).

In considering whether the denial of severance of charges amounted to an error warranting habeas relief, the issue is not whether the failure to sever counts for separate trials was a violation of a state rule of procedure, but whether the failure to sever denied the petitioner due process of law under the Fourteenth Amendment. In order to obtain federal habeas relief, a habeas petitioner must show that the misjoinder of separate criminal charges in a single trial in state court resulted in prejudice so great as to deny the petitioner his right to a fair trial. *Davis v. Coyle*, 475 F. 3d 761, 777 (6th Cir. 2007).

In this case, the trial court's decision to deny Petitioner's motion to sever the charges involving Wilson and Davenport was not an abuse of discretion.  As the People correctly argued, the charges were related and the trial court properly exercised its discretion to deny severance[4]:

> In this case, the trial court correctly determined that severance was not mandatory because the count charging defendant with murdering Irwin Wilson was related to the counts charging defendant with assaulting Jermaine Davenport and taking his car. 4/16, 19. For purposes of the court rule, two offenses are related if they are based on "the same conduct" or "a series of connected acts or acts constituting part of a single scheme or plan." In *People v Tobey*, the decision on which the court rule is patterned, our the Court explained that "same conduct" refers to multiple offenses "as where a defendant causes more than one death by reckless operation of a vehicle" or "offenses within a close-time space sequence, as with the killing of several people with successive shots from a gun or the successive burning of several structures." A series of connected acts refers to offenses "committed to aid in accomplishing another," and offenses evincing a "single scheme" are related "even if considerable time passes between them."

> The murder of Irwin Wilson and the assault on Wilson's cousin, Jermaine Davenport, were clearly "connected acts" for purposes of the court rule. A few minutes before Wilson was shot, Davenport saw a black SUV drive past him as he was sitting in his parked SUV on Drexel St. Codefendant DeShawn Whitman was driving that car, defendant was in the passenger seat, and codefendant Marcus Taylor and another man were in the back seat. 4/22, 93-100. Davenport saw the SUV stop in front of the home of Unique Webster, and heard gunshots from that direction. 4/22, 110-113. The SUV drove away, but Davenport saw it again approximately five minutes later. He heard gunshots, and his back window shattered. Davenport fled in his truck and drove through a field. After colliding with a parked car, he got out of his truck and saw defendant, codefendants, and the fourth man in the street next to the black SUV. Codefendant Whitman said "bitch ass nigger," and all the men shot at Davenport. 4/22, 115-123. Davenport fell to the ground after being shot in the neck. He saw his assailants drive away in his truck and the black SUV. 4/22, 122-124.

> The murder, assault with intent to murder, and carjacking were clearly part of the same criminal episode. Davenport's status as a witness to the murder, who could identify defendant and his codefendants, provided the motive for them to shoot him a few minutes later. This case thus is distinguishable from cases in which courts had to decide whether the similarities between the offenses showed that they were part of a single scheme or plan. Here, the offenses were connected acts because the incidents occurred within minutes of each other at nearby locations and the first shooting established the motive for the second shooting.

---

[4] The People cite to the transcripts as follows: month/day of proceedings, page numbers.

Given that close connection, the trial court correctly concluded that severance was not mandatory because the offenses were related for purposes of MCR 6.120.

The trial court did not abuse its discretion in denying defendant's request for severance under MCR 6.120(C). The court properly weighed the relevant factors . . . .

The record supports the trial court's determination in that regard. Severance would have entailed a second lengthy trial in which the same witnesses would have testified. The case was not complex, and, given the close connection between the offenses, no risk of confusion of the issues existed. Nor was there an increased potential for prejudice where both the murder and the assault with intent to murder offenses arose from shootings. Weighing all the factors, the trial court's decision not to sever the offenses surely was not an abuse of discretion.

Finally, even assuming arguendo that the trial court erred, the error was harmless. To justify reversal of his convictions on the basis of preserved nonconstitutional error defendant must show that it is more probable than not that the error was outcome determinative. Error is outcome determinative if it undermined the reliability of the verdict. "The error is presumed to be harmless, and the defendant bears the burden of showing that the error resulted in a miscarriage of justice."

Here, the alleged error does not undermine the reliability of the verdict. Defendant was not prejudiced because evidence of the murder of Wilson would have been admissible in a trial on the other charges to show defendant's motive. Moreover, the jury's decisions to acquit defendant and codefendant Whitman of murder and acquit codefendant Taylor of all charges demonstrate that the jury considered the offenses separately and determined the culpability of each defendant. 5/10, 5-14. On this record, error, if any, in not severing the offenses was clearly harmless. [People's brief dated 2/28/06, pp 5-9, Michigan Supreme Court No. 130576][footnotes omitted]

Petitioner has failed to meet his burden of showing that the joinder of the charges resulted in either an abuse of discretion or prejudice so great as to deny him a fair trial. Moreover, the People correctly argued that any error was harmless.[5] Because the state court adjudications of Petitioner's first habeas claim were neither contrary to nor an unreasonable application of clearly

---

[5] The trial court also instructed the jury that they may consider only the evidence and the fact that a defendant is charged with more than one crime is not evidence. (Transcript dated 5/5/04, p 199) Jurors are presumed to follow the trial court's instructions.

established Supreme Court precedent, or an unreasonable determination of the facts, habeas

relief is not warranted on Petitioner's first claim.

<u>**Argument II**</u>

**Petitioner is not entitled to relief on his second habeas claims because the claims are not cognizable or without merit and because the state court adjudications of these claims were neither contrary to nor an unreasonable application of clearly established Supreme Court precedent or an unreasonable determination of the facts.**

In his second habeas claim, Petitioner alleges he was denied a fair trial and his right to present a defense.  Specifically, Petitioner alleges that his attorney was restricted from fully testing Unique Webster's credibility and that the trial court's comments and interjections interrupted defense counsel's ability to present a defense for Petitioner, and operated to prejudice Petitioner.  Petitioner raised these claims on direct appeal but the Michigan Court of Appeals rejected them.

The Michigan Court of Appeals first accurately noted that a trial court had broad discretion to control trial proceedings and, in doing so, may impose limits on cross-examination. After setting forth the relevant law with respect to cross-examination, and noting that the right of cross-examination is not unlimited, the Court of Appeals stated the following:

The crux of defendant Hill's Confrontation Clause argument is:

> The Trial Court determined that as one of the three defense attorneys (each of whom obviously represented individual client-defendants) was thorough, the remaining two attorneys could be limited. Mr. Hill's counsel pointed-out after the cross-examination of Unique Webster, a res gestae witness to the murder, that there remained six or seven additional areas he wanted to question Miss Webster about; the Court asked counsel to explain the six or seven, and, after counsel proceeded, acknowledged that counsel had described eight or nine areas. For example, counsel wanted to follow-up on the discrepancies in Miss Webster's trial testimony about hearing tires squealing, in contrast to her previous testimony about hearing nothing; to follow-up on the testimony about false police reports and lack of intimidation, the existence or non-existence of other vehicles on the street (i.e., a white Dodge Dynasty), the possibility that Walker and Davenport were, or appeared to be stalking Wilson, the nature of the relationship with Wilson, and other details, that would have served to

15

properly present her credibility to the jury for consideration. Her credibility was crucial to the case; not only was she present during the murder, and gave differing versions shortly after and a month after, of what exactly had happened, but she was also present when her brother Michael gave a statement incriminating Davenport as the murderer, and she signed the statement. She had spoken with Davenport at the various pre-trial court hearings. Defense counsel was improperly limited from fully testing her credibility; the court's ruling deprived Mr. Hill from effectively defending against the charges.

The prosecution asserts, and we agree, that the record shows that the areas defendant Hill's counsel identifies above were covered by him at trial or by co-defendant Whitman's counsel. Hill's counsel cross-examined Unique Webster regarding whether she heard a car approach and drive away, and whether she heard screeching of tires, and he impeached her testimony in that regard. Hill's counsel also cross-examined Webster regarding her prior identification of Davenport.

Co-defendant Whitman's counsel cross-examined Webster regarding whether she saw Davenport's car and any cars she did not recognize. Whitman's counsel impeached Webster with her statement to the police, and questioned her regarding whether she saw Davenport drive on her street earlier that day. Whitman's counsel also impeached Webster with a prior statement indicating that she at times saw Walker riding with Davenport, and whether she had seen Walker on the street. Whitman's counsel cross-examined Webster regarding her relationship with Wilson, Wilson's drug-dealing activities, and her inconsistent statements regarding those issues. Whitman's counsel also impeached Webster with inconsistent statements she made about the shooting, Wilson's actions, and whether she saw a black truck.

We agree with the prosecution that Webster's inconsistent statements and biases were explored at length during trial. Impeachment of Unique Webster by defense counsel was rampant. We conclude that a reasonable jury would think very little of her credibility, and that further cross-examination could have done little to further diminish their view of her credibility. Thus, if there was error in limiting defendant Hill's counsel's cross-examination of Unique Webster, it was harmless because additional questioning would not have caused the jury to alter its determinations of her credibility and the weight to accord her testimony. [*People v. Hill*, unpublished per curiam opinion dated 2/7/06, Court of Appeals No. 256497][citations omitted]

Any alleged violation of Petitioner's rights under the Michigan Constitution or Michigan law is not cognizable. Petitioner has failed to show a violation of his federal constitutional

rights.  The Confrontation Clause provides that "[in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. Amend VI. The Confrontation Clause protects a defendant's literal right to confront witnesses at the time of trial and a defendant's right to cross-examination.  *Delaware v. Fensterer*, 474 U.S. 15 (1985). Petitioner here claims the Confrontation Clause was violated in the latter, scope of cross-examination, context.

A trial court has the discretion to limit the scope of cross-examination.  *Delaware v. VanArsdall*, 475 U.S. 673, 675 (1986).  This includes discretion to impose limits based on concerns about harassment, prejudice, confusion on the issues, witness safety, or interrogation that is repetitive or only marginally relevant.  *Delaware v. Arsdall, supra*; *King v. Trippett*, 192 F.3d 517, 524 (6th Cir. 1999).  Thus, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective is whatever way, and to whatever extent, that the defense might desire.  *Delaware v. Fensterer,* 474 U.S. at 20.

In Petitioner's case, the trial court made evidentiary rulings throughout trial, and on the seventh day of trial, placed time reasonable limits on cross-examination in the joint trial of three defendants.  As the People correctly argued, the trial court did not abuse its discretion:

> During a pretrial hearing, the trial court indicated that, based on the order the defendants were listed in the case caption, "the order of the attorneys, unless agreed upon otherwise, will be Ms. Silver for Whitman, Mr. Elsey for Hill and Mr. Cripps for Taylor." 4/16, 38. During the first day of jury selection, April 19, 2004, the court indicated that it believed the case would be concluded by the 29 or 3 but asked the prospective jurors to "keep May 3rd, May 4th open." 4/19, 26. The court repeated that time estimate when an empaneled juror asked about the "time frame." 4/21, 277-278.
>
> The People called ten witnesses over the next four days of trial. Among them was Jermaine Davenport, who was cross-examined by the defense attorneys for over one full day. 4/22, 152-184; 4/26, 4-198; 4/27, 20-55. Unique Webster was the final witness on the sixth day of trial. Counsel for codefendant Whitman cross-examined her at length that day. 4/28, 162-216.

On the morning of the seventh day of trial, the trial court realized that the trial was progressing at slower rate than the court and the parties had anticipated, and implemented a new procedure designed to speed up the trial:

> When I originally scheduled the trial, or I should say gave the jury the number of days to prepare themselves to be here, actually as all of you know, I added two extra days more than you gave me just to be on the safe side. Okay?

> And I'm truly concerned that my very, very conservative estimate is becoming very, very, very — What's the word I'm looking for? Not accurate.

> And again, I gave, I added two more days onto what you guys told me. It does seem that some of the questions have been repetitive during subsequent cross-examination.

> So, this is my though that maybe we cal (sic) all work with. Perhaps in this ease we have Ms. Silver, who's conducting a very extensive cross-examination based upon all the discovery materials obviously. And then Mr. Elsey and Mr. Cripps, rather than going through everything that Ms. Silver has covered, which would apply to all three defendants, perhaps you might want to get in and wrap up or reiterate a couple key points that she made during her cross- examination, which would be in the best interest of your clients. And then if there's a particular focus that you have that deals with your client, hit on that area. Okay?

> And I still think that that will lead to a truly, probably more effective cross-examination of a witness rather than re-inventing the wheel every time a lawyer starts a cross-examination. 4/29, 3-4.

The procedure included limiting defense counsel and counsel for codefendant Taylor to twenty minutes of cross-examination of Unique Webster. 4/29, 68. The court explained the reason for that limitation at the conclusion of Webster's testimony.

> At five after 10:00, I think I called everybody up when Mr. Elsey was in his cross-examination.

> And I told Mr. Elsey he has twenty minutes. He had twenty minutes for cross-examination. And I believe I told Mr. Cripps the same thing.

Now, pursuant to Michigan Rule of Evidence 611, this is how we're going to proceed with the remainder of the trial regarding the cross-examination and examination of witnesses.

Mr. Dakmak will do his direct examination. Ms. Silver will do the cross- examination. I don't see me placing any sort of time limit on the direct or cross- examination of Ms. Silver based upon what I've seen during the course of the trial, based on Mr. Dakmak's prior directs and Ms. Silver's prior cross- examinations.

Subsequent attorneys will have twenty minutes maximum to follow up with their cross-examination on behalf of their clients. I think we've gone through the key witnesses in the trial, well, in terms of the extents (sic) of examination and cross-examination.

Again, Ms. Silver will have as much time basically as she needs to do the cross-examination. Mr. Dakmak, you'll have as much time as you need to do the direct examination of a witness.

Ms. Silver's very thorough, very well-prepared. And then Mr. Elsey and Mr. Cripps will have twenty minutes each to follow up on cross-examination at the most, the max, if you'll need that amount of time. If you need more time, you have to petition the Court. 4/29, 68-69.

Those reasonable limitations did not violate defendant's right of confrontation. In making his objection, defense counsel identified several areas that he claimed he was prevented from exploring during cross-examination: (1) whether Webster heard screeching tires, (2) whether Webster saw vehicles driving away, (3) Webster's statement to the police, (4) Webster's reason for changing her statements and her two prior false police reports, (5) whether Webster saw a Dodge Dynasty on the street, (6) whether Webster saw Roosevelt Walker earlier in the day, and (7) whether Webster made inconsistent statements regarding Wilson's arrival at her home on the night of the shooting. 4/29, 69-74.

The record shows that the subjects identified by counsel were generally explored by him or counsel for codefendant Whitman. Defense counsel questioned Webster about whether she heard a car approach and whether she heard it drive away. 4/29, 39. He questioned her about whether she heard the "screeching" of tires, and impeached her testimony in that regard. 4/29, 41, 43-46. He also questioned her regarding her prior identification of Davenport. 4/29, 51.

Codefendant Whitman's counsel engaged in a lengthy cross-examination of Webster. She questioned her about whether she saw a Dynasty or other four-door car on the street, saw Davenport's car, and saw any cars that she did not recognize. Counsel impeached Webster with her statement to the police. 4/28, 189-192, 210-211; 4/29, 77-78. Counsel questioned Webster about whether she

saw Davenport driving up and down street earlier in the day. 4/28, 193. She
questioned Webster about whether she had seen Walker on street, and impeached
her with a prior statement indicating that she sometimes saw him riding with
Davenport. 4/28, 210.

Codefendant's Whitman's counsel also questioned Webster about her
relationship with Wilson, Wilson's activities as a drug dealer, and her inconsistent
statements regarding those matters. 4/28, 162-172, 183-186. Counsel impeached
Webster with her inconsistent statements regarding shooting, Wilson's actions,
and whether she saw a black truck. 4/28, 193-200; 4/29, 6- 10, 16-21. She
questioned Webster about her statement to Sergeant Wilson and two prior
statements, and explored the inconsistencies between those statements and her
testimony. 4/28, 200-212; 4/29, 21-36.

The record, when considered as a whole, shows that the issues of
Webster's observations, inconsistent statements, and biases were fully developed
and explored during trial. Because the defense had ample opportunity to probe the
witness' testimony through extensive cross- examination, the court's decision to
place time limits on defendant's cross-examination of Webster did not violate his
right of confrontation. The court did not abuse its discretion in limiting cross-
examination to avoid the needless consumption of time resulting from repetitive
questions,[33] and that proper exercise of discretion did not deprive defendant of a
fair trial.[34] [People's brief dated 2/28/06, pp 10-16, Michigan Supreme Court No.
130756]

_____

[33] The record reflects that the time limits did not restrict counsel's cross-
examination of the remaining witnesses. At the conclusion of his cross-
examination of Roosevelt Walker, counsel stated "Judge, I think everybody has
covered, Ms. Silver has covered the other questions that I have. So, I don't think
I'm going to have anything else." 4/29,201. Counsel conducted brief
examinations of six of the People's witnesses on the eighth and ninth days of trial,
and no cross-examination of the other two witnesses. 5/3, 30-3 1, 34-35, 56-60,
66, 78, 91, 104, 182- 189; 5/4, 32, 49-50. Counsel briefly examined codefendant
Whitman's five witnesses and chose not to examine codefendant Taylor's two
witnesses. 5/4, 120-121, 179, 188, 201-204; 5/5, 18-25, 41, 57.
[34] Error, if any, was clearly harmless. . . . Here, the existing record shows that the
topics of cross-examination identified by defense counsel were covered by
codefendant Whitman's attorney. Webster's testimony and inconsistent
statements were fully developed, and the additional questioning would not have
caused the jury to alter its determinations of her credibility and the weight to
accord her testimony.


The record reveals that the areas that Petitioner's attorney wanted to cover were covered

either by him or counsel for codefendant Whitman.  The issues of Webster's observations,

inconsistent statements, and biases were fully developed and explored during trial, and the trial

court's reasonable limits on Petitioner's cross-examination of Webster did not violate his right of

cross-examination.  The People also properly pointed out that the trial court's time limits did not

restrict counsel's cross-examination of the remaining witnesses—and Petitioner did not argue this

on direct appeal.  Moreover, any error was harmless where the record indicates that the topics of

cross-examination identified by defense counsel were indeed covered by counsel for Whitman.

Because the state court adjudication of this issue was supported by the record and was neither

contrary to nor an unreasonable application of Supreme Court precedent, habeas relief is not

warranted.

Petitioner also alleges that the trial court's comments and interjections interrupted

defense counsel's ability to present a defense for Petitioner, and operated to prejudice Petitioner.

The Michigan Court of Appeals disagreed:

> The trial court instructed counsel on how to refresh Davenport's memory
> and impeach him with prior testimony and statements. When counsel would not
> follow that procedure, the trial court held a sidebar. The trial court ruled on the
> People's objections to counsel's questioning of Davenport, and held sidebars and
> hearings outside the jury's presence because defense counsel persisted in arguing
> after the trial court had ruled.
>
> We conclude that defendant has failed to show that the trial court's
> comments and rulings suggested the court was biased in the prosecution's favor,
> nor is it likely that the court's remarks unduly influenced the jury such that
> defendant was denied a fair trial. [*People v. Hill*, unpublished per curiam opinion
> dated 2/7/06, Court of Appeals No. 256497]

Petitioner has failed to show a violation of his federal constitutional rights.  Petitioner's

claim is essentially one alleging judicial bias.  In reviewing a judicial bias claim, a court should

employ the initial presumption that the assigned trial judge properly discharged his or her official

duties.  *Harrison v. Anderson*, 300 F.Supp.2d 690, 704 (S.D. Ind. 2004), citing *Bracy v.*

*Gramley*, 520 U.S. 899, 909 (1997).  United States Supreme Court decisions addressing claims of a judicial bias follow two lines of reasoning: one line of cases address charges of "judicial bias" stemming from a trial judge's "personal interest," or "stake," in the outcome of a case, usually derived from some extrajudicial association with the cause or with one of the parties.  *In re Murchison*, 349 U.S. 133, 136 (1955); *Tumey v. Ohio*, 273 U.S. 510, 532 (1927).  Another line of cases are described as "judicial misconduct" cases, and includes cases in which the trial court is accused of conducting the proceedings in manner that suggests the favoring of one party over another.  *Liteky v. United States*, 510 U.S. 540, 555-56 (1994); see also *Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002)(This court has looked to the Supreme Court's decision in *Liteky*. . . to provide the standard for deciding judicial bias claims; in that case, the Court explained that "the pejorative connotation of the terms 'bias' and 'prejudice' demands that they be applied only to judicial predispositions that go beyond what is normal and acceptable.")  Petitioner here alleges bias in the latter context.

The due process clause requires a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of the particular case.  *Bracy v. Gramley*, 520 U.S. 899, 904-905 (1997).  In *Liteky*, the Supreme Court held that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion."  *Liteky*, 510 U.S. at 555.  Judges' opinions "as a result of what they learned in earlier proceedings" do not establish bias or prejudice against an individual or his case.  *Liteky*, 510 U.S. at 551.  To show improper bias, a judge's comments must "display a deep-seated favoritism or antagonism that would make a fair judgment impossible."  *Liteky*, 510 U.S. at 551.  "[A] judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune."  *Liteky*, 510 U.S. at 556.  "[E]xpressions of impatience,

dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display" do not establish "bias or partiality." *Liteky*, 510 U.S. at 555-556. The "pejorative connotation of the terms 'bias' and 'prejudice' demands that they be applied only to judicial predispositions that go beyond what is normal and acceptable." *Liteky*, 510 U.S. at 552. Under this standard, "[o]nly in the most extreme of cases would disqualification on the basis of bias and prejudice be constitutionally required." *Williams v. Anderson*, 460 F.3d 789, 814 (6th Cir. 2006).

Petitioner here has failed to overcome the heavy presumption of impartiality. As the People noted, record does not reveal that the trial judge's conduct or rulings denied Petitioner a fair trial:

> The record in this case shows that the trial court simply ruled on the People's objections to counsel's questions about Davenport's financing of his real estate business, reporting of his income for tax purposes, and titling of assets. The court had to hold sidebars and hearings outside the presence of the jury because defense counsel continued to argue after the court had ruled. 4/22, 154-157, 167-172. The court instructed counsel on the procedure to use when refreshing Davenport's recollection and impeaching him with his prior testimony and statements, and held a sidebar when counsel persisted in using an [sic] a different procedure. 4/22, 163-166; 4/26, 11-13, 31, 38-40, 44-45; 4/27, 27-30. The court similarly instructed counsel to follow the procedure during his cross-examination of Unique Webster. 4/28, 41-45. Finally, the court ruled on other objections, and held hearings outside the presence of the jury when necessary to make informed evidentiary rulings. 4/26, 5-6, 8-10; 8/27, 20-21; 4/28, 172-182.

> The court's comments and rulings, when considered in the context of the lengthy trial, in no way suggested that it was biased in favor of the People. No likelihood exists that the court's conduct influenced the jury, let alone that it unduly influenced the jury so as to deny defendant a fair trial. [People's brief dated 2/28/06, pp 10-17, Michigan Supreme Court No. 130756]

For the reasons by the People in the state appellate courts and by the Michigan Court of Appeals in its 2/7/06 opinion, Petitioner has failed to demonstrate a violation of his federal constitutional rights. Because the Michigan Court of Appeals' determination was neither

contrary to nor an unreasonable application of clearly established Supreme Court precedent,

habeas relief is not warranted.

<u>**Argument III**</u>

**Petitioner's remaining claims are procedurally defaulted or without merit and habeas relief is not warranted on these claims.**

In his fourth habeas claim, Petitioner alleges that the trial court abused its discretion and violated Petitioner's constitutional rights by allowing the state to introduce evidence without laying a proper foundation.  In his fifth habeas claim, Petitioner alleges that the trial court erred and that his right to confrontation was violated where the trial court allowed codefendant Whitman's statements to be heard via Sergeant Abdella.  In his sixth habeas claim, Petitioner alleges that his constitutional rights were violated at sentencing where his sentencing guidelines were scored based on facts which the prosecutor had not charged, and which had not been submitted to the jury or admitted by Petitioner; Petitioner cites to *Blakely v. Washington*, 542 U.S. 296 (2004) to support this claim.  These claims are procedurally defaulted.

Federal habeas review is barred where a state court declined to address a prisoner's federal claims because the prisoner failed to meet state procedural requirements.  In such cases, the state court judgment rests on independent and adequate state procedural grounds. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Harris v. Reed*, 489 U.S. 255 (1989); *Coleman v. Thompson*, 501 U.S. 722 (1991).

Here, Petitioner's fourth, fifth, and sixth habeas claims are procedurally defaulted because Petitioner raised these claims for the first time in his motion for relief from judgment. The Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal the denial of his motion for failure to establish grounds for relief pursuant to M.C.R. 6.508(D). Likewise, the Michigan Supreme Court denied Petitioner's application for leave to appeal because he failed to meet his burden of establishing entitlement to relief under M.C.R. 6.508(D).

25

For a claim to be procedurally defaulted on the basis of a state procedural rule the petitioner must have violated a procedural rule and the state court must have also based its decision on the procedural default. *Simpson v. Jones*, 238 F.3d 399 (6th Cir. 2000). If a state prisoner defaults his federal claims in state court in a decision based on an independent and adequate state procedural rule, those claims cannot be reviewed in a habeas proceeding. *Coe v. Bell*, 161 F.3d 320 (6th Cir. 1998). In order for the procedural default doctrine to apply, the last state court rendering a judgment in the case must have based its judgment on the procedural default. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

Here, the Michigan Court of Appeals and Michigan Supreme Court, the last state courts rendering a judgment in the case, based their decisions to deny Petitioner's applications for leave to appeal the trial court's denial of his motion for relief from judgment on Petitioner's failure to comply with M.C.R. 6.508(D).[6] While the judgments were brief, they were based on an independent and adequate state procedural rule: Petitioner's procedural default of failing to raise these claims in his appeal of right. Since the Michigan Court of Appeals and Michigan Supreme Court were the last state courts rendering judgments in this case, their decisions denying Petitioner's claims on the basis of a state procedural bar prevents federal habeas review. *Simpson,* 238 F.3d at 407 ("While the judgment [referencing MCR 6.508(D)] was brief, it was based on an independent and adequate state procedural rule."); see also *Alexander v. Smith*, __ F.3d __, 2009 U.S. App. LEXIS 3532, 2009 WL 426261, *6 (6th Cir. Feb. 20, 2009)(Confirming that *Simpson* is binding precedent).

When a petitioner defaults on his "federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred

unless the prisoner can demonstrate cause for the default and actual prejudice . . . or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Petitioner has the burden of showing cause and prejudice to overcome a procedural default. *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (citing *Coleman*, 501 U.S. at 754).

To the extent that Petitioner, in his third habeas claim, attempts to establish cause to excuse his default by claiming that his appellate counsel was ineffective for failing to raise these claims in his direct appeal, he does not do so. Attorney error will not constitute adequate cause to excuse a procedural default unless it amounts to constitutionally ineffective assistance of counsel under the criteria established in *Strickland v. Washington*, 466 U.S. 668 (1984).[7]

The mere failure to raise a claim even if meritorious on appeal does not constitute ineffective assistance of appellate counsel sufficient to establish cause to excuse a procedural default. *Rust v. Zent*, 17 F.3d 155 (6th Cir. 1994). It is well-established that appellate counsel is not required to raise every nonfrivolous issue. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Tactical decisions regarding issues on appeal "are properly left to the sound professional

---

[6] M.C.R. 6.508(D) form order is invocation of procedural default. *Luberda v. Trippett*, 211 F.3d 1004 (6th Cir. 2000).

[7] The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *Strickland v. Washington*, 466 U.S. 668 (1994). To show that he was denied the effective assistance of counsel under federal constitutional standards, Petitioner must demonstrate that, considering all of the circumstances, counsel's performance fell below the objective standard of reasonableness <u>and</u> that a reasonable probability exists that, but for counsel's conduct, the result would have been different. *Strickland,* 466 U.S. at 669, 694. Judicial scrutiny of counsel's performance must be highly deferential. Courts presume that an attorney is competent and the burden rests upon the defendant to show a constitutional violation. *United States v. Pierce*, 62 F.3d 818, 833 (6th Cir. 1995). A strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). A petitioner must also overcome the presumption that under the circumstances, the challenged action might be considered sound trial strategy.

judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1985).  An accused does

not have a constitutional right to have his counsel press nonfrivolous points requested by his

client if counsel decides as a matter of professional judgment not to press these points.  *Brown v.*

*Foltz*, 763 F.2d 191, 194 n 4 (6th Cir. 1985).  In *Smith v. Robbins*, 520 U.S. 259, 288 (2000), the

United States Supreme Court stated:

> In *Jones v. Barnes*, 463 U.S. 745 [parallel citations omitted] (1983), we held that
> appellate counsel who files a merits brief need not (and should not) raise every
> nonfrivolous claim, but rather may select from among them in order to maximize
> the likelihood of success on appeal.  Notwithstanding *Barnes*, it is still possible to
> bring a *Strickland* claim based on counsel's failure to raise a particular claim, but
> it is difficult to demonstrate that counsel was incompetent.  See, e.g., *Gray v.*
> *Greer*, 800 F.2d 644, 646 (C.A. 7 1986)("Generally, only when ignored issues are
> clearly stronger than those presented, will the presumption of effective assistance
> of counsel be overcome")

See also *McMeans v. Brigano*, 228 F.3d 674 (6th Cir. 2000)(Where claim was not "dead bang

winner," Petitioner's appellate counsel's failure to raise it on direct appeal did not constitute

cause to excuse procedural default).

In this case, the record reveals that Petitioner's appellate attorney raised several claims on

direct appeal but that his convictions were ultimately affirmed.  Petitioner has failed demonstrate

that the issues that were allegedly ignored by appellate counsel on direct appeal were clearly

stronger than those that were presented and he has failed to overcome the strong presumption

that his appellate counsel was competent.  Since Petitioner has failed to establish cause for his

procedural default, there is no need to determine whether Petitioner can meet the prejudice prong

of the "cause and prejudice" test.  *Smith v. Murray*, 477 U.S. 527 (1986); *Long v. McKeen*, 722

---

*Strickland*, 466 U.S. at 689. The *Strickland* Court cautioned that courts must take care to avoid
second-guessing strategic decisions that did not prove successful. *Strickland*, 466 U.S. at 694.

F.2d 286 (6th Cir. 1983).  Petitioner also cannot show a fundamental miscarriage of justice.[8]

Because Petitioner has failed to meet his burden of establishing cause and prejudice for his

procedural default, and because he has failed to establish a showing of a fundamental

miscarriage of justice, review of his fourth, fifth, and sixth habeas claims is precluded.  These

claims are indeed without merit for the reasons set forth by the trial court's opinion dated

4/16/07.

To the extent that Petitioner alleges in his seventh habeas claim that he should have been

appointed counsel on direct appeal, Petitioner was in fact appointed counsel on direct appeal.

(See claim of appeal and order appointing counsel, Court of Appeals No. 256497)  Petitioner has

failed to show that he had a right to appointed counsel in his post-conviction proceedings.

---

[8] A petitioner may overcome a procedural default in the absence of "cause and prejudice" upon a showing of actual innocence. *Lott v. Coyle*, 261 F.3d 594, 620 (6th Cir. 2001), citing *Schlup v. Delo*, 513 U.S. 298, 314-315 (1995), and *Herrera v. Collins*, 506 U.S. 390, 417 (1993). The fundamental miscarriage of justice exception applies in the *extraordinary* case where the habeas petitioner demonstrates that the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Murray v. Carrier*, 477 U.S. 478, 496 (1986)(Emphasis added)  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. "[T]he petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327.  In other words, the petitioner must show "that more likely than not any reasonable juror would have reasonable doubt." *House v. Bell*, 126 S.Ct. 2064, 2077 (2006). Petitioner has made no such showing here.

## **Conclusion**

For all of the foregoing reasons, Respondent asks that this Honorable Court deny Petitioner habeas relief.  Respondent also opposes any request for discovery, evidentiary hearings, bond, oral argument, or any other relief.

Respectfully submitted,

MICHAEL A. COX
Attorney General

s/Raina I. Korbakis

Assistant Attorney General
Appellate Division
P.O. Box 30217
Lansing, MI  48909
(517) 373-4875
korbakisr@michigan.gov
(P49467)

Dated: April 1, 2009
AG20083030127A/Hill.Answer 4-1-09

**Certificate of Service**

I hereby certify that on April 1, 2009, I electronically filed the foregoing papers with the

Clerk of the Court using the ECF system which will send notification of such filing to the

following:

    HONORABLE JOHN CORBETT O'MEARA
    MAGISTRATE JUDGE MONA K. MAJZOUB

and I hereby certify that Cindy Tessman has mailed by United States Postal Service the papers to

the following non-ECF participant:

    ASKIA HILL #331718
    CARSON CITY CORRECTIONAL FACILITY
    10522 BOYER ROAD
    CARSON CITY, MI 48811

                                        MICHAEL A. COX
                                        Attorney General

                                        s/Raina I. Korbakis

                                        Assistant Attorney General
                                        Appellate Division
                                        P.O. Box 30217
                                        Lansing, MI  48913
                                        (517) 373-4875
                                        korbakisr@michigan.gov
                                        (P49467)