# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION



**APR 2 9 2009**

CLERK'S OFFICE
DETROIT

ASKIA HILL,

     Petitioner

vs.

WAYNE COUNTY,

     Respondent

_____/

U.S. DISTRICT Ct. #05:08-CV-14102

U.S.D.J. JOHN CORBETT O'MEARA

U.S.M.J. MONA K. MAJZOUB

MICHAEL A. COX (P43039)
Attorney General
PO BOX: 30212
7Th. Floor G.
Mennen WMS Bldg.
Lansing Michigan 48909
(517) 373-1110

ASKIA HILL 331718
Petitioner In Pro Se
CARSON CITY CORRECTIONAL FACILITY
10522 BOYER ROAD / PO BOX: 5000
CARSON CITY, MICHIGAN. 48811-5000

_____

## DECLARATION OF SERVICE

## PETITIONER'S ANSWER IN OPPOSITION TO THE RESPONDENT'S ANSWER

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

ASKIA HILL,

          Petitioner

vs.

WAYNE COUNTY,

          Respondent

_____/

        In Pro Se

U.S. DISTRICT Ct. #05:08-CV-14102

U.S.D.J. JOHN CORBETT O'MEARA

U.S.M.J. MONA K. MAJZOUB

## DECLARATION OF SERVICE

    I ASKIA HILL pursuant to 28 U.S.C. §1746 will testify, declare, depose, and certify truly under the penalty of perjury that on 4/27/ ,2009 I filed with the Clerk of the United States District Court the following:

       **PETITIONER'S ANSWER IN OPPOSITION TO THE RESPONDENT'S ANSWER**

and Mailed one(1) true copy too:

ATTN. R.I. KORBAKIS
ASSISTANT ATTORNEY GENERAL
ATTORNEY FOR THE RESPONDENT
PO BOX: 30217
LANSING, MICHIGAN 48913

                    SUBMITTED BY,

                    _A. Hill_

                    ASKIA HILL 331718
                    CARSON CITY CORRECTIONAL FACILITY
                    10522 BOYER ROAD / PO BOX: 5000
                    CARSON CITY, MICHIGAN. 48811-5000
                    DATED: 4/27/ ,2009

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ASKIA HILL,

       Petitioner

VS.

WAYNE COUNTY,

       Respondent

_____/

U.S. DISTRICT Ct. #05:08-CV-14102

U.S.D.J. JOHN CORBETT O'MEARA

U.S.M.J. MONA K. MAJZOUB

In Pro Se

PETITIONER'S ANSWER IN OPPOSITION TO THE RESPONDENT'S ANSWER

This matter is before this court on petitioner's ASKIA HILL answer in opposition to the respondent's answer filed on April 1, 2009.

PROCEDURAL AND HISTORICAL HISTORY:

Following a jury trial the petitioner was convicted of one count of assault with the intent to murder; carjacking; felon in possession of a firearm; and felony firearm.  The petitioner was sentenced as a second habitual offender to 13 to 30 years in prison for the assault and carjacking convictions; 3 to 7½ years for the felon in possession conviction; and 2 years consecutive for the felony firearm conviction.  The petitioner was tried jointly with codefendants DeShawn Whitman and Marcus Taylor.  Marcus Taylor was acquitted of all charges relating to both shootings.  The petitioner filed a claim of appeals with the Michigan Court of Appeals and raised two issues who issued an unpublished per curiam opinion affirming the petitioner's conviction.  The petitioner then filed an application for leave to appeal with the Michigan Supreme Court raising the same two claims and was denied leave to appeal on September 26, 2006.  In December of 2006 the petitioner filed with the trial court pursuant to MCR 6.500 et seq a motion for relief from judgdment raising four addition claims which the trial court denied in an opinion and order on April 16, 2007.  Thereafter the

1

...tioner filed a delayed application with the Michigan appellate courts which both denied leaves for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D).  The petitioner exhausted all state remedies regarding these six claims On June 23, 2008.  In September of 2008 the petitioner pursuant to 28 U.S.C. §2254 filed the instant petition with supporting brief.  This court ordered the respondent to filed a response by April 1, 2009 and the respondent has complied with this court order.  The following events relates to the respondent's answer:

To save from being repetitious the petitioner adopts those statement of facts from his supporting brief at (pp. 1-15) and incorporates them here in the instant answer in opposition with the following exception:

**Claim:** *(Respondent's Objection to the Statement of Facts).*

*The respondent erred by misleading this court with an objection that the petitioner's statement of facts are not supported by the record is not worthy of merit.*

On June 3, 2005 the respondent (i.e. the state) filed a brief on direct appeal beginning with the Michigan Court of Appeals in case #256497 and at page-3 of the respondent brief verbatim and in its completeness states:

> *The people [accept] the defendant's [statement of facts] for purposes of this brief on appeal subject to the additions noted in the argument section of this brief.  See Also Res, Ans. at Page-3.*

The respondent objects to the petitioner statement of facts on the grounds these statements of facts are not supported by the record (Res. Ans. p-3) lack merit.  The respondent clearly excepted all excerpts averred in the petitioner's facts on direct review, and therefore, waives any later objections in this habeas corpus action.  The respondent, the state appellate courts, and trial court all relied on these facts to affirm the petitioner's direct and collateral review of his conviction and sentence.  It would now be a great miscarriage of justice to allow the respondent to misled this court with a

2

rtless objection ... [t]hat these statement of facts are now unsupported by the record.   [I]f anything, this court should scrupulously examine the respondent's answer with great care because the proper ethical and legal question ... is why and for what purposes the objection is meant for?

## AEDPA AND PROCEDURAL DEFAULT DOCTRINE:

To save from being repetitious the petitioner adopts those standards of review from his supporting brief at (pp. 16-20) and incorporates them here in the instant answer in opposition.

## ANSWER IN OPPOSITION:

The petitioner avers the following facts to the respondent's answer:

**Respondent's Claim-1:** *(Not Cognizable - Without Merit - Contrary - Unreasonable).*
*The respondent has failed to state any specific grounds other than legal speculation for denying habeas relief on this claim?*

The respondent is on a legal fishing expedition with numerous hooks in the constitutional lake hoping one hook will caught this court attention.   The petitioner avers that the only question here is whether the state contrary too, or unreasonably applied Supreme Court precedent or federal law to this claim.   In this context WILLIAMS v TAYLOR 529 U.S. 362, 406-09 (2000) and 28 U.S.C. §2254(d) is straightforward.   See Also MARTIN v WILSON 419 FS2d 976, 979 (ND Ohio 2006); MAPLES v STEGALL 427 FS2d 1020, 1025 (6th cir 2005).   A states court decision is contrary to clearly established Supreme Court precedent if the state court applies [a rule] that contradicts the governing law set forth in Supreme Court cases or if the state court decided a case differently than the Supreme Court on a set of materially indistinguishable facts.   LOPEZ v WILSON 426 F3d 339, 342 (6th cir 2005); HUTCHISON v BELL 303 F3d 720, 728 (6th cir 2002).   A state court decision involves an unreasonable application of clearly established federal law if the state court identifies the correct governing legal rules from the Supreme Court cases but unreasonably applies it to [the facts] of the particular prisoner's case or if the state court extents a Supreme Court precedent to a

3

text where it should not apply or fails to extent it to a context where it should apply.  MISKEL v KARNES 397 F3d 446, 451 (6th cir 2005) citing (WILLIAMS v TAYLOR).

      The central issue of this claim is whether the state violated the petitioner Due Process of Law to a fair trial by denying the petitioner his request for severance involving multiple codefendants?  The respondent avers:

> *That petitioner alleges a violation of the Michigan Constitution, Michigan Court Rules or Law, such claims are not cognizable upon a federal habeas review.  A federal habeas court may only grant habeas relief to a petitioner in custody in violation of the Constitution or Law or Treaties of the United States.  28 U.S.C. §2241(c)(3) & 28 U.S.C. §2254(a), and habeas relief may not be based upon perceived error of state law.  (citation omitted) See Res. Ans. at p-11.*

      The petitioner avers that the respondent is being misleading once again.  While the respondent is correct ... [that is] only a partially true statement ... unless such statue, evidentiary or court rule offend some principle of justice so rooted in our Constitutional traditions as to be ranked as fundamental.  MONTANA v EGELHOFF 518 U.S. 37, 43 (1996).  For example, this Sixth Circuit District court has held in U.S. v CROCKETT 586 FS2d 877, 887 (ED Mich 2008) that the rules of evidence must succumb to the defendant's Sixth Amendment rights [quoting] CRAWFORD v WASHINGTON 541 U.S. 36, 61 (2004) that the Sixth Amendment is not subject to the vagaries of the rules of evidence.  For example, this Sixth Circuit District court has held in WILLIAMS v JONES 391 FS2d 603, 614 (ED Mich 2005) that court rules are not binding on federal courts.  For example, the United State Supreme Court in HALBERT v MICHIGAN 545 U.S. 605 (2005) found that MCL 770.3a (2000) was unconstitutional because this statute forbids a trial judge from appointing appellate counsel for first trier review in Michigan's appellate courts.  In other words, such state laws and rules are not binding on federal courts if they offend fundamental rights under the Fifth, Sixth, or

4

rteenth Amendments.   The petitioner avers that the subject of joinder and severance involving multiple defendants are: **(1)** Mixed questions of law and facts not subject to the presumption of correctness under 28 U.S.C. §2254; and **(2)** Federal review is based upon a case by case review under the constitutional provisions and statute involving the Fourteenth Amendment.   Section-1 of the Fourteenth Amendment to the United states Constitution provides:

> *All persons born or naturalized in the United States and*
> *subject to the jurisdiction thereof are citizens of the*
> *United States and of the State wherein they reside. No States*
> *shall make or enforce any law which shall abridge the*
> *privileges or immunities of citizens of the United States;*
> *nor shall any States deprive any person of life, liberty, or*
> *property, without Due Process of law; nor deny to any person*
> *within its jurisdiction the equal protection of the law. See*
> *Also Res. Ans. at p-11.*

The respondent has not said anything which would bar this court from reviewing this claim.   As the respondent correctly points out ... [I]n order to obtain federal habeas relief a habeas petitioner must show that the misjoinder of separate criminal charges in a single trial resulted in prejudice so great as to deny the petitioner his right to a fair trial.   DAVIS v COYLE 475 F#D 761, 777 (6th cir 2007).   In other words, the respondent has said nothing that would prevent this court from reviewing this claim on the merits.

For example, this case involves two shooting incidents occurring on April 6, 2000 in the city of Detroit, Michigan at two different locations.   In one incident relating to the murder charge for which the petitioner was acquitted, where Irwin Wilson was shot and killed in front of 4171 Drexel.   The other incident involved a carjacking that occurred in the area of 4205 Lakeview in which the complaining witness sustained a gunshot wound to his neck and multiple gun shots to his vehicle.   Mr. Davenport allegedly did not name any of the perpetrator until 2003 when he himself was facing the murder charges of Mr. Wilson.   Davenport testified allegedly that he did not tell the police who had

ot him because he planned to retaliate later.  TT 04/22/04 at pp. 135, 138-39.

The only series of connected acts or acts constituting parts of a single scheme

or plan involves Mr. Davenport's connection to both incidents.  The respondent on

the other hand has not proffered any proof to this court that the petitioner was

connected to these shootings or refuted the transcripts at (TT 04/22/04 pp. 72-

76).  The only series of connecting events, acts, or acts constituting a scheme

or plan is Mr. Davenport's connection to both shootings.  For these reasons, the

petitioner avers because of the sheer magnitude of unrelating charges involving

his codefendants the results of his trial can never be deemed reliable, and so

greatly prejudicial, he was effectively denied the right to a fair trial under

provisions of the Fourteenth Amendment Due Process of Law.

**Respondent's Claim-2:** *(Not Cognizable - Without Merit - Judicial Bias).*

*The respondent has failed to state any specific grounds other than legal speculation for denying habeas relief on this claim, cited no Supreme Court precedent or Federal cases indicating this claim is without merit, and then re-characterized this claim as a judicial bias claim has not stated any grounds by which this court could deny relief on this claim?  Notwithstanding this analysis, the latter is procedurally bar?*

The petitioner still avers that the respondent is on a legal fishing

expedition.  While the respondent has made inferences and cited two Supreme Court

precedents and one federal case on this claim none of these cases would support

the respondent's allegation that this claim is not cognizable or without merit?

Res. Ans. pp. 15-20.  To the contrary, assuming that a state trial court has

committed a Constitutional error during trial federal courts will find that the

error is not harmless under BRECHT v ABRAHAMSON 507 U.S. 619, 638 (1993) only if

the petitioner shows that the error resulted in "actual prejudice", meaning that

the Constitutional error had a substantial and injurious effect of influence in

determining the jury's verdict.  FRY v PLILER ___ U.S. ___; 127 SC 2321, 2328

(2007).  If a federal court is in "virtual equipoise" as to the harmlessness of

the error under the <u>BRECHT</u> standard we will treat the error as if it affected the

dict.  FRY 127 SC at 2328 n-3 quoting O'NEAL v McANINCH 513 U.S. 432, 435; 115 SC 992 (1995); accord BURBANK v CAIN 535 F3d 350, 357 (5th cir 2008).

In this context, the confrontation clause guarantees criminal defendants the right to cross examine the witnesses against him.  DAVIS v ALASKA 415 U.S. 308, 316-17; 94 SC 1105 (1974).  Thus, exposing the motivation of a witness "in testifying" is a proper and important function of the constitutionally protected right of cross examination.  It is [axiomatic] that defense counsel should be permitted to expose to the jury facts relative to the possible motivation of a witness who is testifying favorably for the prosecution and is critical to the prosecution's case.  The Fifth Circuit for example in BURBANK 535 F3d at 357-58; citing U.S. v JIMENEZ 464 F3d 555, 559 (5th cir 2006); WILKERSON v CAIN 233 F3d 886, 891 (5th cir 2000) recognized that the "right to cross examination is particularly important".  In analyzing a violation of the confrontation clause federal courts look primarily at the specific testimony omitted, not the weight of the evidence notwithstanding the omitted testimony, and ask whether the trial court's erroneous decision to disallow such testimony had a substantial and injurious effect or influence in determining the jury's verdict.  Under this standard, a petitioner may obtain habeas relief only if there is more than a mere reasonable possibility that [the error] contributed to the verdict.

The petitioner avers that the state courts violated his Sixth Amendment confrontation right by limiting his cross examination of Unique Webter's credibility as a res gestae witness to the murder, and the trial court's comments and interjections interrupting defense counsel's ability to present a defense. While the scope of cross examination is within the discretion of the trial judge, this discretionary authority [to limit] cross examination *comes into play [only after]* there has been [permitted] *as a matter of right sufficient cross*

7

*examination to satisfy the Sixth Amendment:*

> *The Sixth Amendment guarantees that in all criminal prosecution the accused shall enjoy the right ... to be confronted with the witnesses against him.*

This right "is particularly important" when the witness is critical to the prosecution. The respondent in this claim has opined that because counsel for codefendant Whitman was thorough on his cross examination of Ms. Webter limitations on the petitioner's cross examination did not violate his confrontation rights is contrary too or an unreasonable application of Supreme Court precedent enunciated in SMITH v ILLINOIS 390 U.S. 129; 88 SC 748 (1968) and STRICKLAND v WASHINGTON 466 U.S. 668; 103 SC 2052 (1984) because codefendant Whitman's counsel cannot be held accountable for his attorney's counseled actions or inactions for representing the petitioner at trial.

In the present case, the petitioner's attorney advised the trial court that there remained six or seven additional question [he wanted] to ask Ms. Webter. The trial court acknowledged that counsel had in fact described eight or nine questionable areas of cross examination for Ms. Webter. See TT 04/29/04 at pp. 69-74. These areas of questioning would have served to properly present her credibility to the jury for consideration. Ms. Webter's credibility was crucial to the prosecution not only because she was present during the murder but to the defense because she was also present when her brother gave incriminating statements the Davenport was the murderer of Mr. Wilson and had spoken with Davenport prior to various pre-trial hearings. TT 05/05/04 at pp. 222-23. Had these areas of questioning been exposed to the jury Ms. Webter's credibility and motives would have weaken the prosecution's case against him. The respondent on the other hand has not present any factual record which refutes the transcripts listed above. See also infra pp. 2-3.

The essential purpose of the right of confrontation is to allow

8

defendants the opportunity of cross examination. DAVIS v ALASKA 415 U.S. 308; 94 SC 1105 (1974). A limitation on cross examination which prevents defendants from putting before a jury facts upon which an inference of bias, prejudice, or lack of credibility can be the basis that constitutes a violation of the right to confrontation. DAVIS ibid; U.S. v GARRETT 542 F2d 23 (6th cir 1976); PEOPLE v MECHIGIAN 168 Mich App 609 (1988). Likewise, the state of Michigan has consistently held on cross examination counsel has the right to draw from a witness anything tending to modify, weaken, contradict, or explain testimony on direct examination, or which tends to affect the credibility of the witness. PEOPLE v DELLABONDA 265 Mich 486 (1933); PEOPLE v BELL 88 Mich App 345 (1979). However, the respondent now opines that this application does not apply here is not only contrary to this state law but an unreasonable application of Supreme Court precedent. In such situations, the petitioner avers that the confrontation clause guarantees an [opportunity] for effective cross examination. It cannot be said with any certainty that as a matter of right the petitioner's attorney was [permitted] that right to satisfy the Sixth Amendment? The petitioner also acknowledge that the confrontation clause does not guarantee defendants cross examination to whatever way and extent the defense might wish DELAWARE v FENSTERER 474 U.S. 15, 20; 106 SC 292 (1985). However, since the petitioner's attorney was not [permitted] effective cross examination of Ms. Webter there is no FENSTERER violation in this area.

While courts has "wide latitude" insofar as the confrontation clause is concerned to impose [reasonable] limits on such cross examination that is based on concerns about *harassment, prejudice, confusion of the issues, witness safety, or interrogation that is repetitive or marginally relevant DELAWARE v VAN ARSDELL 475 U.S. 673, 679; 106 SC 1431 (1986)* the respondent has not alleged any of these grounds to denied habeas corpus relief but instead stated judicial bias as

9

grounds which is procedurally barred pursuant to WAINWRIGHT v SYKES 433 U.S. 72 (1977); COLEMAN v THOMPSON 501 U.S. 722 (1991); MAUPIN v SMITH 785 F2d 135, 138 (6th cir (1986) because this allegation was never raised by the petitioner nor addressed by the state on direct or collateral review.  See Res. Ans. at 21-24.

In closing, the petitioner avers that the confrontation clause is generally satisfied when a defendant has been [permitted] to expose to the jury the facts from which jurors could appropriately draw inferences relating to the reliability of a witness.   DAVIS 415 U.S. at 318.  In order to establish a violation of this confrontation right the petitioner need not establish that the jury would have reached a different result.  VAN ARSDELL 475 U.S. at 679-80. Instead, the [focus] is on the particular witness omitted testimony.  Id at 680. To establish that [a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [defense] counsel been permitted to pursue his proposed line of cross examination [U.S. v CALDERON-LOPEZ 268 Fed Appx 279, 290-91 (5th cir 2008)] the one question the respondent has failed to address is whether or not this error had a substantial or injurious effect on the jury's verdict.  BRECHT v ABRAHAMSON 507 U.S. 619; 113 SC 1710 (1993) supra; VASQUEZ v JONES 496 F3d 564, 575 (6th cir 2007); KOTTEAKOS v U.S. 328 U.S. 750, 776; 66 SC 1239 (1946).  However, the Sixth Circuit Court of Appeals held in GRAY v MOORE 520 F3d 616, 625 (6th cir 2008) quoting O'NEAL v McANINCH 513 U.S. 432, 436 (1995) *[T]his inquiry does not assign a affirmative burden of proof on the petitioner nor does it require a petitioner to show that the error was outcome determinative [but instead] places the risk of doubt on the state.  Holding that uncertainty in answering this question militates in favor of the habeas petitioner.*  GRAY 520 F3d at 625-26 fn-2; citing CALDWELL v BELL 288 F3d 838, 842 (6th cir 2002); U.S. v BAUGHAM 449 F3d 167, 177 (DC Cir 2006).

Because the respondent has failed to state any grounds by which this

court could deny habeas relief, this court should review this claim on the merits and reach its own findings of facts and legal conclusions to determine whether federal relief is appropriate?

**Respondent's Claim-3:** (Procedural Default Doctrine and Cause).

The respondent avers to this court that the petitioner's remaining claims should be denied: **(1)** They are procedurally defaulted or without merit; **(2)** The appellate courts, the last state courts rendering a judgement denied relief for failure to comply with MCR 6.508(D) and while their judgement was brief they were based on an independent and adequate state procedural rule; and **(3)** His third habeas claim attempts to establish cause to excuse his default by claiming appellate counsel as cause ... he does not do so? All are inadequate grounds which would prevent this court from reviewing these claims as procedurally barred. Res. Ans. at pp. 25-27.

The petitioner has conducted a survey of the jurisdictional case laws in an attempt to determine whether [any respondent] has ever raised a procedural default question on conjoined grounds that federal review is foreclosed because the claim is [procedural defaulted or without merits] in the same independent grammatical legal sentence? No such case law exist state or federally. In essence, the respondent is asking this court's help in deciding this procedural default issue? Likewise, a procedural default does not bar consideration of a federal claim either on direct or habeas review unless the last state court expressly states that its judgement rest on the procedural bar. HARRIS v REED 489 U.S. 255, 262-63 (1982). The respondent avers that the petitioner's remaining claims are procedurally barred because:

In order for the procedural default doctrine to apply the last state court rendering a judgement in the case must have based its judgement on the procedural default.

\*\*\*\*\*\*\*\*\*\*

Here, the Michigan Court of Appeals and Michigan Supreme Court, the last state courts rendering a judgement in the case based their decisions to deny petitioner's application for leave to appeal the trial court's denial of his motion for relief from judgement on petitioner failure to comply with MCR 6.508(D). While the judgements were brief, they were based on an independent and adequate state procedural rule: [P]etitioner procedural default of failing to raise these claims in his appeal of right. Since the Michigan Court of Appeals and Michigan Supreme Court were the last state courts rendering judgements in this case, their

**11**

*decisions denying petitioner claims on the basis of a state procedural bar prevent federal habeas review ... is wrong, wrong, wrong!!! Res. Ans. at p-26.*

The petitioner has included in its completeness the respondent's entire allegation for denying relief identifying the state appellate courts as the <u>last state courts</u> judgements for denying the petitioner remaining claims and strongly avers that the respondent has not stated an adequate ground preventing this court from review those claims on the merits. MAUPIN v SMITH 785 F2d 135, 138 (6th cir 1986); BARR v CITY OF COLUMBIA 378 U.S. 146, 149-50; 84 SC 1734 (1964); FORD v GEORGIA 498 U.S. 411, 422-25; 111 SC 850 (1991).   The reason why this is unrefutable because the Michigan Appellate Courts denial of a petitioner's applications for leave to appeal are not [<u>reasoned opinions</u>] and are irrelevant to the procedural default inquiry because their [<u>unreasoned decisions</u>] do not articulate their reasons for denying a petitioner's claim on the merits to be evaluated under 28 U.S.C. §2254(d).   HARRIS v STOVALL 212 F3d 940, 943 (6th cir 2000).   In this context, the respondent has failed to meet the requirements of the <u>MUAPIN TEST</u>, therefore in theory, the petitioner is not required to show cause for his failure to comply with a state procedural rule? MAUPIN 785 F3d at 138.   The respondent simply copied and modified this argument from GARDNER v KAPTURE 261 FS2d 793, 801 (ED Mich 2003) but failed to point out to this court that the <u>GARDNER</u> court [<u>although relief was denied</u>] for failure to demonstrate actual prejudice, reviewed <u>GARDNER'S</u> claims on the merits.   This would also normally foreclose review for the respondent's third allegation for denying relief but the petitioner will address ineffective assistance of appellate counsel as cause to excuse the procedural default claims 3-6 on the merit.

Whether a state court rested its holding on a procedural default barring federal habeas review is a question of law to be reviewed de novo. BURROUGHS v MAKOWSKI 282 F3d 410, 413 (6th cir 2002) citing COUCH v JADE 951 F2d

94, 96 (6th cir 1991).   Under the procedural default analysis a federal court must determine if a petitioner failed to comply with a state procedural rule and analyze whether the state court based its decision on the state procedural rule. SIMPSON v JONES 238 F3d 399, 406 (6th cir 2000).

However, a procedural default can be over come if a petitioner can show cause and prejudice for the default.   CARPENTER v MOHK 163 F3d 938, 943–46 (6th cir 1998) citing RUST v ZENT 17 F3d 155, 160 (6th cir 1994) *stating if a habeas corpus petitioner is barred from presenting one or more of his claims to the state courts because of a procedural default he has waived those claims for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error.*   WAINWRIGHT v SYKES 433 U.S. 72, 87; 97 SC 2497 (1977).

As [cause] for his failure to raise a equal protection and due process violation; confrontation clause violation; and sentencing violation under the Constitutional provisions of the Fifth, Sixth, and Fourteenth Amendment on direct appeal the petitioner avers it was do to ineffective assistance of appellate counsel.   TUCKER v RENICO 317 FS2d 766, 772–73 (ED Mich 2004).   Contrary to the respondent's belief, ineffective assistance of appellate counsel can constitute as [cause] for excusing a procedural default.   MURRY v CARRIER 477 U.S. 478, 488 (1986).

The respondent here does not refute the fact that the petitioner presented his ineffective assistance of appellate counsel for the first time in his motion for relief from judgement.   Instead, the respondent take issue with: (1) That the mere failure to raise a claim even if meritorious on appeal does not constitute ineffective assistance of appellate counsel to excuse a procedural default; (2) That tactical decisions regarding issues on appeal are properly left to professionals; and (3) An accuse does not have a constitutional right to have

13

his counsel raise every nonfrivolous issue on appeal.  Res. Ans. pp. 27-28.

Not just any deficiency in counsel's performance will [excuse a procedural default].  TUCKER 317 FS2d at 772.  The assistance must have been so ineffective as to violate the federal constitution.  Id.  In order to assert in the federal courts that the ineffective assistance of appellate counsel was the [cause] for the procedural default in the state court that claim itself must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.  The claim also must be presented in the manner prescribed [by the state's] procedural rules.  The petitioner take issue that MCR 6.500 et seq is unconstitutional to preserve a ineffective assistance of appellate counsel claim on direct review under any Michigan statute or state rule.  MCR 6.500 et seq and its cause and prejudice standard operate solely for the purpose of addressing issues not raised on direct appeal, retroactive changes in the law, or new discovered evidence.  It is Supreme Court and Federal law which prescribes the manner in which Michigan state prisoners must preserve for federal review an ineffective assistance of appellate counsel claim for the first time in state courts.  While raising an ineffective assistance of appellate as cause for another procedurally defaulted claim it is not prescribed within the meaning of MCR 6.500 et seq.  The only requirement under Supreme Court precedent is that an ineffective assistance of appellate counsel claim be presented to the state courts independently before it may be used to establish cause and presented in the manner prescribed by state procedural rules.  EDWARDS v CARPENTER 529 U.S. 446; 120 SC 1587 (2000).  Since there is no Michigan state prescribed procedural rule on this subject it is unconstitutional to hold a Michigan state prisoner to the cause and prejudice standard dictated in MCR 6.500 et seq on a ineffective assistance of appellate counsel claim?

14

Moreover, the question of prejudice under the cause and prejudice standard for habeas review of a defaulted claim is slightly different from the analysis of prejudice for ineffective assistance of counsel purposes because in analyzing a petitioner's contention of prejudice to excuse a procedural default the court should assume that the petitioner stated a meritorious constitutional claim. EGE v YUKINS 380 FS 2d 852 (ED Mich 2005). Only after a full review by a federal court on the defaulted claim, if a habeas petitioner's claim of ineffective assistance of appellate counsel lacks merit. It cannot constitute [cause] to excuse procedural default of an underlying claim. HARRIS v STEGALL 157 FS2d 743 (ED Mich 2001).

In regard to the grounds raised by the respondent for denying ineffective assistance of appellate counsel as [cause] to excuse his underlying claims the petitioner takes issue with them for following reasons:

> *The right to the effective assistance of counsel includes the right to the effective assistance of appellate counsel. EVITTS v LUCEY 469 U.S. 387, 396; 105 SC 837 (1985); BENOIT v BOCK 237 FS2d 804, 810-11 (ED Mich 2003). Although the Sixth Amendment right to counsel does not require an appellate attorney to raise every non-frivolous issue on appeal an attorney who has presented strong but unsuccessful claims on appeal may nonetheless deliver a deficient performance and prejudice a defendant by omitting on appeal a dead bang winner. CLEMMONS v DELO 124 F3d 944, 954 (6th cir 1997); U.S. v COOK 45 F3d 388, 395 (10th cir 1995); BANKS v REYNOLDS 54 F3d 1508, 1515 (10th cir 1995) (failure to raise dead bang winner on appeal constitutes ineffective assistance of counsel even though counsel may have raised other strong but ultimately unsuccessful claims on appeal); MATIRE v WAINWRIGHT 811 F2d 1430, 1438 (11th cir 1987) (appellate counsel may be ineffective where the trial error is obvious from the record and must have leaped out upon a casual reading of the transcripts).*

A petitioner may establish ineffective assistance of counsel by showing that counsel ignored a significant and obvious issue? In order for a federal habeas court to make such a determination the court must first examine the merits of the claims which appellate counsel might have presented on direct appeal but

failed to do so.   [T]he question then becomes whether appellate counsel was
constitutionally ineffective for failing to raise these issue on appeal, and if
so,   whether   the   petitioner   was   prejudice   by   counsel's   unsatisfactory
representation.   ALDER v BURT 240 FS2d 651, 667 (ED Mich 2003) quoting MAPES v
COYLE 171 F3d 403, 413-14 (6th cir 1999).   To prevail on an ineffective
assistance of appellate counsel claim the petitioner must show (1) His appellate
counsel's performance was objectively unreasonable; and (2) he was prejudice,
meaning a reasonable probability existed that but for counsel's actions or
inactions he would have prevailed on his appeal.   CODDINGTON v LANGLEY 202 FS2d
687, 698 (ED Mich 2002) quoting SMITH v ROBBINS 528 U.S. 259, 285; 120 SC 746
(2000).   Nor can appellate counsel's actions be attributed to any rational
appellate strategy not to raise these issue on appeal.   For example, at the time
of the petitioner's jury trial in May of 2004 CRAWFORD v WASHINGTON 541 U.S. 36,
51; 124 SC 1354 (2004) was new uninterpreted Supreme Court law which all defense
counselors timely objected to the statements made by co-defendant Whitman to Sgt.
Abdella.   TT 05/03/04 pp. 191-231.   The record clearly indicates:

> The United States Supreme Court in CRAWFORD v WASHINGTON came
> down with a very strongly worded court opinion.   It says a
> codefendant's   statement   made   to   police   is   clearly   not
> admissible as to any other codefendant in any way whatsoever.
> TT 05/03/04 pp. 195-96.

There is no tactical reasons for appellate counsel not to have
preserved this new Supreme Court opinion for state and federal review.   Appellate
counsel at the very least should have known from other Supreme Court precedents
that a defendant is deprived of his Sixth Amendment right of confrontation where
a non-testifying codefendant's incriminating statements are introduced at their
joint trial.   To save from being repetitious as in the above example, claims 4-6
are well documented factually before this court to review and to judge the
prejudice prong, and should have leaped out at appellate counsel upon a casual

16

reading of the trial transcripts.   In the present claim appellate counsel's behavior cannot be considered objectively reasonable if the strategy is predicated on ignorance of the law, inadequate preparation, or a misapprehension of controlling legal authorities.   WIGGINS v SMITH 539 U.S. 520; 123 SC 2527 (2003); LEONARD v MICHIGAN 256 FS2d 723, 731 (WD Mich 2003).   The respondent simply labeling appellate counsel's error as tactical [i.e. strategic choices] does not shield his performance from the Sixth Amendment scrutiny.   HENRY v SCULLY 918 FS 693 (SD N.Y. 1996) CAVE v SINGLETARY 971 F2d 1513 (11th cir 1992). Counsel will still be found ineffective despite a [strategic decision] if the [strategy employed] was not a sound or reasonable one.   Accord PEOPLE v DALESSANDRO 165 Mich App 569 (1988).   In closing the petitioner strongly avers that the [strategy itself] not to address these dead bang winners on direct appeal was constitutionally deficient to establish [cause] to excuse the procedural default of claims 4-6 and the prejudice standard as defined in EGE v YUKINS 380 FS 2d 852 (ED Mich 2005).

    For these reasons the petitioner states that the respondent has failed established any grounds which would prevent this court from reviewing his underlying procedural defaulted claims on the merit due to ineffective assistance of appellate counsel as cause.

    The petitioner avers that the respondent's appellate counsel's analysis is misleading ... a dead bang winner is an issue which is obvious from the trial record and one that would have resulted in a reversal on appeal MEADE v LAVIGNE 265 FS2d 849, 870 (ED Mich 2003) that a federal court must assume that a petitioner has stated a meritorious constitutional claim McCALVIN v YUKINS 351 FS2d 665, 670-74 (ED Mich 2005) and the question of prejudice is slightly different EGE v YUKINS 380 FS2d 852 (ED Mich 2005).   To satisfy these requirements a federal court must review those claims appellate counsel failed to

raise on direct appeal to determine whether the petitioner has establish cause to excuse a procedural default ... anything less is contrary too or an unreasonable application of Supreme Court precedent.

**Supplemental Claim:** *(Detroit Crime Lab & Ballistic Evidence).*

*The Detroit Mayor and Chief of Police have closed the Detroit Crime Lab because an investigation has revealed a 10% error rate in ballistic evidence testing and a 50% noncompliance rate with evaluation.*

This case involves two shooting incidents in the evening hours of April 6, 2000 in the City of Detroit Michigan.   One incident relates to the murder charge of Irwin Wilson shot and killed in front of 4171 Drexel.   The other incident involved a carjacking and an assault with the intent to murder involving Jemaine Davenport in the area of 4205 Lakeview.   Both incidents occurred an estimated three miles from one another.   Davenport was charged with the murder of Mr. Wilson in May of 2000 based upon witness identifiaction(s) [e.g. Unique Webter] but the charges were subsequently dismissed.   Davenport also did not name all of the alleged perpetrators relating to his complaint until 2003.   The events leading to these alleged identifications by Davenport are: **(1)** In may of 2002 Davenport named two of the defendants in the present case as being involved in his assault; **(2)** Also in may of 2002 FBI Agent Paul Sorce became involved in the Wilson murder, and for unknown reasons, Davenport was shown 29 pictures from which he identified Mr. Whitman and Mr. Hill; and **(3)** One year later, for unknown reasons, Agent Sorce showed Davenport a photograph of Mr. Taylor whom he also identified.   The factual record in the present case clearly indicates that Davenport lied to state and federal police officers on numerous occasions.   For example, Davenport denied having had a gunfight with Wilson.   However, a gunshot residue test performed on Davenport although allegedly revealed nothing significant to unique gunshot particles, it did showed very high levels of lead particles on his hands.   Likewise Ms. Webter, who is the central focus of the petitioner second claim identified Davenport as Wilson's murderer and that she

18

believed the bullet in Davenport's neck might be from Wilson's gun. [TT 05/04/04 p. 170]. The only series of connecting act or acts constituting parts of a single scheme or plan all involves Mr. Davenport's connection with both incident. Infra p. 6. The forensic evidence and facts in this case is as follow:

> Officer Lawrence Kealen testified that he responded to the Drexel incident around 10pm. That he found the deceased on the ground with a 38 revolver in his hand resting on his chest. That four of the five shots in the revolver had been fired.

> Officer Donald Rem an evidence technician who also had responded to the Drexel incident performed a gunshot residue test on Wilson, found and catalogued a number of 9mm shell casings found at the scene. It was Officer Rem who also performed the gunshot residue test on Davenport at the hospital where Davenport stayed overnight, however, the bullet in his neck was not removed due to its proximity to Davenport's spine.

> In addition to the 9mm casings found on Drexel the police found five casings on Lakeview, three were 9mm, one was a 7.62, and the other was a 380. Police evidence technician Michael testified that the 9mm casings found on Drexel and those found on Lakeview had been fired from the same gun.

The only bond, link, or nexus to both incidents is Mr. Davenport. In this context, the petitioner avers that the Detroit Crime Lab's ballistic evidence testing was defected or imperfect because: (1) the police evidence technicians failed to secure Davenport's medical records and x-ray photos to determine whether they could possibly identify whether or not the bullet in Davenport's neck came from a 38 revolver; (2) the crime lab technicians failed to perform a lead comparison test on the 9mm castings from both crime scenes with the lead particles found on Davenport's hands; or (3) Sought outside assistance to help identify these gunshot particles. These three critical ballistic flaws could have placed and inculpated Davenport in both shootings, critically weakened his credibility and the state's case against him, and supported the defense theory that the petitioner was not present at either shooting incident.

19

Alternatively, the petitioner avers it has now been 9 years since Davenport was shot. In theory a new medical examination may now reveal because the bullet has now changed position, it is now possible to retrieve it for testing. The petitioner also avers that the Michigan State Appellate Defenders Office in conjunction with the Wayne County Prosecutor's Office is reviewing all prior convictions that might have been based partly on crime lab ballistic evidence and noncompliance with such evaluation stating:

> We do not know how far back in time these errors may extend. For now, until we better understand the dimensions of the problems, we are intensely reviewing all cases for the last 5 years and any cases prior to that where it looks like something might be wrong.

The petitioner believes that the Detroit Crime Lab failure to preserve and analyze evidence might have played a vital role in his conviction and in the wake of the foreseeable ripple affect of federal cases that will follow regarding the Detroit Crime Lab, it is within this court's power to allow an evidentiary hearing pursuant to 28 U.S.C. §2254(d); TOWNSEND v SAIN 372 U.S. 293; 83 SC 745 (1963); KEENEY v TAMAYO REYES 504 U.S. 9; 112 SC 1715 (1992). The Supreme Court noted:

> [A] federal court must grant a evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact finding procedure employed by the state was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state court hearing; or (6) for any reason it appears that the state trier of facts did not afford the habeas applicant a full and fair hearing.

Moreover, a habeas petitioner seeking such a hearing must allege the ways in which the state court fact finding procedure were less than adequate. DELONG v THOMPSON 790 FS 594 (ED Va 1991); ADBUR'RAHMAN v BELL 226 F3d 696 (6th

20

cir 2000); McNEIR v HALEY 97 FS2d 1270 (MD Ala 2000); COLEMAN v MITCHELL 268 F3d 417 (6th cir 2001).   In the present case however, it is unnecessary for the petitioner to allege whether the Detroit Crime Lab procedures were less than adequate, the state of Michigan and their officials has openly admitted that fact.   The question then becomes whether the petitioner has presenting compelling facts and evidence to this court to grant such hearings.   The petitioner's only response to that question would be that if evidence now exist that shows definitively that it is more likely than not that Davenport murdered Mr. Wilson, that Davenport was somehow involved in both shooting incidents, and that the petitioner was not involved in Davenport's manufactured carjacking and assault to advert the police attentions else where, it would in fact be a fundamental miscarriage of justice if the petitioner was compelled to remain incarcerate for Davenport's crimes without further proceedings to determine whether the Detroit Crime Lab contributed to his conviction and allowed a guilty man to go free.

**RELIEF SOUGHT:**

For the reasons stated in this answer in opposition this court **SHOULD** consider the petitioner's facts and legal conclusions to the respondent's grounds for denying writ of habeas corpus on his exhausted and procedural default claims. This court **SHOULD** additionally consider whether in light of all the allegations pending against the Detroit Crime Lab and their ballistic evidence testing **ORDER** further proceeding to determine whether an evidentiary hearing is necessary to prevent a fundamental miscarriage of justice, and **GRANT** any other relief this court deems just and fair under the circumstances.

SUBMITTED BY:

*Ce. Hill*

ASKIA HILL 331718
Dated: 4/27/ ,2009

21