**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**ASKIA HILL,**

        **Petitioner,**

**v.**

**BLAINE LAFLER, WARDEN,**

        **Respondent.**

**Case No. 5:08-CV-14102**

**Judge Peter C. Economus,**

    **By Designation**[1]

**OPINION AND ORDER**

Petitioner, Askia Hill, presently incarcerated at a Michigan correctional facility, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. Petitioner was convicted after a jury trial in the Wayne Circuit Court of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, carjacking, MICH. COMP. LAWS § 750.529a, felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and commission of a felony with a firearm, MICH. COMP. LAWS § 750.227b. For the reasons stated below, the Court denies the petition. The Court also declines to issue Petitioner a certificate of appealability.

### I. BACKGROUND AND PROCEDURAL HISTORY

This Court recites as follows the relevant facts relied upon by the Michigan Court of Appeals. These facts are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

> Defendants were tried jointly[], as a result of two shootings on April 6, 2000. Relating to the murder charges, Erwin Wilson was shot and killed in front of 4171 Drexel [Street], in Detroit. The assault with intent to murder and carjacking charges arose out of another shooting, in which Jermaine Davenport, Wilson's cousin, was shot in the next and his vehicle, a Yukon, was taken. Both defendants were acquitted of first-degree murder and the lesser offense of second-degree murder.

---

[1] Pursuant to Title 28, United States Code, § 292(b), Chief Judge Alice M. Batchelder designated and assigned Judge Peter C. Economus to hear this case. (*See* Designation, docs. # 16 and 17.)

> The prosecution's theory was that [Petitioner], Whitman, Taylor and a fourth man[] were in a black SUV around 10:00 p.m. on April 6, 2000, and shot and killed Erwin Wilson, a street-level drug dealer, in front of 4171 Drexel Street. A few minutes later, the black SUV approached Jermaine Davenport, Wilson's cousin, who was in another SUV parked on the street talking to fourteen-year-old Unique Webster.[2] Someone from the black SUV shot at Davenport and the SUV and chased him, until Davenport's SUV crashed into a parked car and stopped. Davenport got out of his SUV and was shot at by Whitman and the others. Davenport sustained a gunshot wound to the neck, and Davenport's SUV was taken by several of the perpetrators. Davenport walked to the house on Drexel, saw Wilson lying in the street, and saw Roosevelt Walker, a friend of Davenport's with whom Davenport had been earlier. Davenport did not name any perpetrators unwell well after the shootings. In May 2000, Davenport was charged with Wilson's murder, but the charges were later dropped.
>
> Defendant Whitman's defense theory was that Jermaine Davenport argued with Wilson on the evening in question and was in the SUV from which the shot that killed Wilson was fired. [Petitioner]'s defense was that he was not present at either shooting incident, and that Jermaine Davenport, who was involved in drug-dealing along with Wilson, had every reason to lie regarding this case.

*People v. Whitman*, 2006 WL 287861, *1 (Mich. Ct. App. Feb. 7, 2006) (footnote omitted). Defendant Marcus Taylor was tried with the defendants, but he was acquitted of all charges related to both shootings. *Id.*, *1, n1. Petitioner filed an appeal by right. His appellate counsel filed a brief in the Michigan Court of Appeals that raised the following claims:

> I. The trial court's refusal to sever the charges relating to [Erwin] Wilson, from those relating to Jermaine Davenport, was an abuse of discretion which denied [Petitioner] of a fair trial and due process of law under the Sixth and Fourteenth Amendments.
>
> II. [Petitioner] was denied a fair trial and his constitutional right to present a defense and to due process under the Sixth and Fourteenth Amendments, through the trial court's

---

[2] The Court of Appeals misstates one fact: Unique Webster was talking to Erwin Wilson, not Jermaine Davenport. (Doc. # 9 – 9, People's Opening Statement, page 25; doc. # 9 – 12, Direct Examination of Unique Webster, page 122.) That misstatement, however, does not impact the analysis herein.

2

> (A) comments and interjections, and (B) limitations upon
> cross-examination, such that the defense was belittled and
> unfairly limited in its presentation.

The Michigan Court of Appeals confirmed Petitioner's convictions in an unpublished decision. *People v. Whitman, supra.* Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, but the court denied the application. *People v. Hill*, 721 N.W.2d 185 (Mich. 2006).

Next, Petitioner filed a motion for relief from judgment in the trial, raising the following claims: (1) Michigan court rules preclude "operation of the cause and prejudice standard" applied at trial; (2) he was denied effective assistance of appellate counsel where counsel failed to raise several issues on direct appeal; (3) the trial court abused its discretion in allowing evidence to be introduce without the proper foundation; (4) Petitioner's right to confrontation was violated when he was not permitted to cross-examine the co-defendant; and (5) the sentencing guidelines were based on facts not introduced into evidence. (State Trial Court's Opinion Denying Motion for Relief, page 3, Doc. # 9 – 20.) The court denied the motion, determining that Petitioner failed to demonstrate the requisite "good cause for failure to raise the grounds on appeal and actual prejudice resulting from the alleged irregularities that support the claim for relief[.]" (*Id.*, page 2, citing Michigan Court Rule 6.508(D)(3)(b).) Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals. The Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal for "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." (Order, December 14, 2007, Doc. # 9 – 20, page 1.) The Michigan Supreme Court denied Petitioner's application for leave to appeal for the same reason. *People v. Hill*, 750 N.W.2d 191 (Mich. 2008).

Petitioner's petition for writ of habeas corpus sets forth the following claims:

> Argument One: The trial court's refusal to sever the charges relating to [Erwin] Wilson from those relating to Jermaine Davenport was an abuse of discretion which denied [Petitioner] a fair trial and due process under the Sixth and Fourteenth Amendments.
>
> Argument Two: [Petitioner] was denied a fair trial and his constitutional rights to present a defense and to due process under the Sixth and Fourteenth Amendments through the trial court's (A) comments and interjections, and (B) limitations upon cross examination such that the defense was belittled and unfairly limited in its presentation.
>
> Argument Three: [Petitioner] was denied effective assistance of appellate counsel as cause for his failure to raise these meritorious claims on direct appeal.
>
> Argument Four: The trial court abused its discretion and violated [Petitioner's] constitutional rights of due process, equal protection, and fair trial by allowing state evidence to be introduced without the proper foundation being laid.
>
> Argument Five: It was reversible error for the trial court to allow Mr. Whitman's statements to be heard via Sgt. Abdella in lieu of live testimony before the trier of facts [sic] in violation of [Petitioner's] constitutional right to confrontation and right to a fair trial where Mr. Whitman's testimony was admitted into evidence via Sgt. Abdella without a showing of unavailability and a prior opportunity for cross-examination by [Petitioner] at trial.
>
> Argument Six: The trial court violated [Petitioner's] federal constitutional rights, U.S. Const. [Amendments] V, VI, & XIV at sentencing by scoring the statutory sentencing guidelines based on its findings of additional facts with the prosecutor had not charged, which had not been submitted to the jury, and which [Petitioner] had not admitted.
>
> Argument Seven: [Petitioner] should have been appointed appellate counsel to represent him on first tier review in the Court of Appeals pursuant to the Sixth Circuit's decision based upon *Simmons v. Kapture*, 474 F.3d 896 ([6th Cir.] 2005) that *Halbert v. Michigan*, 545 U.S. 605, 125 S. Ct. 2588 (2005) should be applied retroactively on collateral review.

(Petition, doc. # 1, pages 8 – 9.)

## II. STANDARD OF REVIEW

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause, § 2254(d)(1), "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412 – 13 (2000). The Supreme Court has recently clarified that "review under § 2254(d)(1) is limited to the record that was before the state court . . . ." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). In other words, "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before the state court." *Id.* at 1400; *see Bray v. Andrews*, 640 F.3d 731, 737 (6th Cir. 2011).

Under the "unreasonable application" clause, § 2254(d)(1), a federal habeas court may grant the writ only if the state court's application of clearly established federal law to the facts of the prisoner's case was objectively unreasonable in light of the evidence presented in the state court proceedings. *Williams*, 529 U.S. at 409 – 11. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law," *id.* at 410, such that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."

5

*Harrington v. Richter*, 131 S.Ct 770, 786 (2011). Finally, under the "unreasonable determination" clause, § 2254(d)(2), federal courts must bear in mind that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S. Ct. 841, 849 (2010).

Section 2254(d), as amended by AEDPA, is a "purposefully demanding standard." *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (*en banc*) (citing *Harrington*, 131 S. Ct. at 786). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice system, not a substitute for ordinary error correction through appeal." *Harrington*, 131 S. Ct. at 786 (internal quotation marks omitted). To obtain relief, a habeas petitioner must "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786 – 87. This "highly deferential standard" requires that determinations made in state court "be given the benefit of the doubt." *Pinholster*, 131 S. Ct. at 1398 (internal quotation marks omitted).

### III. DISCUSSION

### A. Motion to Sever

Petitioner first claims that the trial court's refusal to sever the charges relating to Erwin Wilson from those relating to Jermaine Davenport denied Petitioner a fair trial and due process under the Sixth and Fourteenth Amendments. (Petition, pages 21 – 27.) The Michigan Court of Appeals rejected this claim on the merits as follows:

> This Court reviews a trial court's determination whether severance is mandatory de novo. *People v. Abraham*, 256 Mich. App. 265, 271-72; 662 N.W.2d 836 (2003). Review of the trial court's decision to sever related offenses is for an abuse of discretion.

6

> *People v. Duranseau*, 221 Mich. App. 204, 208; 561 N.W.2d 111 (1997). . . .
>
> The trial court did not err in concluding that severance was not mandatory. Two offenses are related if they are based on the same conduct or a series of connected acts. MCR 6.120(B). The prosecution maintains, and we agree, that Erwin [sic] Wilson's murder and the assault on Jermaine Davenport, Wilson's cousin, constitute "connected acts" under the court rule. Shortly before Wilson was shot, Davenport was parked in his SUV and saw a black SUV drive by, driven by defendant Whitman with defendant Hill in the passenger seat and codefendant Marcus Taylor in the back seat. Davenport saw the black SUV stop in front of Unique Webster's house and heard gunshots. The black SUV drove away, but Davenport saw it about five minutes later, at which time he heard gunshots and his vehicle's rear window shattering. Davenport drove off, was pursued, and after crashing into a parked car, got out of his SUV and saw defendants Whitman[,] Hill and Taylor next to the black SUV. All the men shot at Davenport, he was struck in the neck, and the men drove away in his SUV and the black SUV. The acts happened within minutes, in proximity to each other, and the shooting of Wilson may have been the motive to Davenport's shooting. We conclude that the trial court did not err in concluding severance was not mandatory. *People v. Tobey*, 401 Mich. 141; 257 N.W.2d 537 (1977).

*People v. Whitman*, 2006 WL 287861, * 4-5 (Mich. App., Feb. 7, 2006). The court also found that the trial court's denial of Petitioner's request for severance was not an abuse of discretion, noting that the trial court set forth its reasons and that the record supported this determination. *Id.* at *5.

Under Michigan law, the trial court had the discretion to determine whether the claims should be severed, and after a hearing on the matter, the court denied the motion. Under MCR 6.121(D), "the court may sever the trial of defendants on the ground that severance is appropriate to promote fairness to the parties and a fair determination of the guilt or innocence of one or more of the defendants."

Petitioner's objections to the trial court's alleged errors of state law are errors for which "federal habeas corpus relief does not lie." *Estelle v. McGuire*, 502 U.S. 62, 67, 112 (1991).

To be cognizable in federal habeas corpus, there must be constitutional errors that were material to the outcome of the case and resulted in a denial of fundamental fairness to Petitioner. *Jameson v. Wainwright*, 719 F.2d 959 (6th Cir. 1983). To obtain federal habeas relief on this claim involving state law, Petitioner must show that misjoinder of the counts "resulted in prejudice so great as to deny a defendant his right to a fair trial." *Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007) (citation and internal alterations omitted). A risk of undue prejudice exists whenever joinder of counts permits introduction of evidence of other crimes that would otherwise be inadmissible. *Id.* at 777.

> By allowing joinder of offenses, the possibility exists that a jury may use evidence of one of the charged crimes to infer a general criminal disposition by the defendant; the jury also may confuse or cumulate the evidence of the various crimes charges. The prejudice that [a petitioner] must demonstrate, however, in order to justify a grant of a writ of habeas corpus is *actual* prejudice, not merely the *potential* for prejudice.

*Id.* at 777 (internal citations omitted). Here, Petitioner argues that the trial court should have granted his motion to sever, but he demonstrates no actual prejudice. Without more, this Court cannot substitute its own judgment for that of the State of Michigan. "[A] state rule of law does not run afoul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to the prisoner at bar." *Spencer v. Texas*, 385 U.S. 554, 564 (1967) (reaffirmed by *Marshall v. Lonberger*, 459 U.S. 422 (1983)). Petitioner's first argument is without merit.

### B. Trial court's comments and limitations on cross-examination

In his second argument, Petitioner asserts that the trial court denied him a fair trial by making comments and interjections throughout the trial and by limiting Petitioner's counsel's ability to cross-examine Unique Webster. (Petition, pages 28-35.) The Michigan Court of

Appeals reviewed for an abuse of discretion the trial court's determination to limit cross-examination and other rulings involving its control of trial proceedings. *People v. Whitman*, 2006 WL 287861, *5 (Mich. Ct. App., Feb. 7, 2006) (citing *People v. Sexton*, 250 Mich. App. 211, 221; 646 N.W.2d 875 (2002)). "Under MRE 611(a), a trial court has broad discretion to control trial proceedings, and in doing so, may impose time limits on cross examination." *Whitman*, 2006 WL 287861 at *5 (citing *People v. Thompson*, 193 Mich. App. 58, 62; 483 N.W.2d 428 (1992)). "The right of cross-examination is not without limit; neither the Confrontation Clause nor due process confers an unlimited right to admit all relevant evidence or cross-examine on any subject." *Id.* at *6 (internal citations omitted). The appellate court noted that the areas of cross-examination identified by Petitioner's counsel "were covered by him at trial or by co-defendant Whitman's counsel." *Id.* at *7. Inconsistencies of statements and biases of witnesses were "explored at length at trial." *Id.* Indeed, "[i]mpeachment Unique Webster by defense counsel was rampant." *Id.* The appellate court concluded that "if there was error in limiting [Petitioner's] counsel's cross-examination of Unique Webster, it was harmless because additional questioning would not have caused the jury to alter its determination of . . . credibility and the weight to accord [to] testimony." *Id.*

The Sixth Amendment guarantees the criminal defendant the right "to be confronted with the witnesses against him." "At the core of the Confrontation Clause is the right of every defendant to test the credibility of witnesses through cross-examination." *Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000) (citing *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974); *Mayes v. Sowders*, 621 F.2d 850, 855 (6th Cir. 1980)). However, a trial court retains the discretion to limit the scope of cross-examination. "This includes discretion to impose limits based on concerns about harassment, prejudice, confusion of the issues, witness safety, or interrogation

9

that is repetitive or only marginally relevant." *Id*. at 736 (citing *King v. Trippett*, 192 F.3d 517, 524 (6th Cir. 1999)). Thus, the Confrontation Clause "guarantees the *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985).

In *Boggs*, the Sixth Circuit noted that the *Davis* Court made an important distinction between a "general attack" and a more "particular attack" on biases or prejudices.

> Thus, although *Davis* trumpets the vital role cross-examination can play in casting doubt on a witness's credibility, not all conceivable methods of undermining credibility are constitutionally guaranteed. In particular, the *Davis* Court distinguished between a "general attack" on the credibility of a witness—in which the cross-examiner "intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony"—and a more particular attack on credibility "directed toward revealing possible biases, prejudices, or ulterior motives as they may related directly to issues or personalities in the case at hand." . . . Faced with a situation where a trial court barred cross-examination bearing on a witness's bias and motive to testify, the Court concluded that the countervailing state interests "cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness." In a concurrence, Justice Stewart underscored that the Confrontation Clause was implicated only because Davis was seeking to show bias or prejudice.

*Boggs*, 226 F.3d at 736-37 (citing *Davis*, 415 U.S. at 316, 321 (internal citations omitted)). In the *Davis* trial, Davis, who was charged with burglary, was prevented from showing that a key witness was on probation for burglary. Davis argued that his purpose was to show the witness's bias because the witness was trying "to shield suspicions of his own involvement in the crime, and because he may have feared that his own probation was in jeopardy." *Davis*, 415 U.S. at 319. Although the *Davis* Court found that the trial court violated the Confrontation Clause by barring cross-examination, in *Boggs*, the Sixth Circuit upheld the trial court's bar. Boggs, charged with rape, attempted to cross-examine a witness on her alleged prior false accusation of

10

rape, but the trial court would not permit it. The Sixth Circuit upheld that decision, noting that Boggs' Confrontation Clause argument "improperly blurs the precise distinctions drawn in Confrontation Clause jurisprudence." *Boggs*, 226 F.3d at 739.

> Not having articulated an argument sounding in motive, bias or prejudice, Boggs instead seeks to elevate his purpose—attacking [the witness's] general credibility—into a constitutionally mandated right. He argues that because [the witness's] credibility is central to his case, the Sixth Amendment requires that he be allowed to cross-examine her on an incident bearing on that credibility. Because this contention goes beyond the clear sweep of the Confrontation Clause traced by *Davis* [and its progeny], we cannot accept it as a ground for habeas relief.

*Id.* at 739. In sum, the salient question is whether the trial court's limitation on cross-examination implicated the defendant's ability to show bias or prejudice, rather than general issues of credibility.

Here, Petitioner argues that the trial court violated his right to a fair trial by limiting his counsel's time to cross-examine Unique Webster. Petitioner states that his counsel at trial wanted additional time to cross-examine Webster regarding several issues, including discrepancies in her testimony regarding what she heard and saw during the night in question. "These areas of questioning would have served to properly present her credibility to the jury for consideration." (Petition, page 33.) "Her credibility was crucial to the case, not only because she was present during the murder, but she was also present when her brother gave [an] incriminating statement[] that Davenport was the murderer and signed that statement, and had spoken with Davenport during various pre-trial hearings." (*Id.*, internal citation omitted.)

Petitioner's argument falls precisely within the scope of *Boggs*, where the cross-examination seeks to make a general attack on credibility, not to make a particularized confrontation on bias or prejudice. A review of the record, including the trial transcript, shows that considerable time was devoted to cross-examination of Webster, including exploration of

11

her credibility or alleged lack thereof. Indeed, the trial court granted wide latitude to counsel for co-defendant Whitman, as the following cross-examination process was set forth:

> So, this is my thought that maybe we [can] all work with. Perhaps in this case we have Ms. Silver, who's conducting a very extensive cross-examination based upon all the discovery materials obviously. And then Mr. Elsey [Petitioner's counsel] and Mr. Cripps [co-defendant Taylor's counsel], rather than going through everything that Ms. Silver has covered, which would apply to all three defendants, perhaps you might want to get in and wrap up or reiterate a couple key points that she made during her cross-examination, which would be in the best interest[s] of your clients. And then if there's a particular focus that you have that deals with your client, hit on that area. Okay?

(Trial Transcript, doc. # 9-13, page 4.) Petitioner's counsel objected on the record to this process (*id.*, pages 69-70), but neither at that time nor now was the objection based on anything other than general credibility of the witness. For that reason, the Confrontation Clause is not implicated, and Petitioner cannot show that the trial court violated his right to a fair trial.

Petitioner also argues that the trial court's interjections violated his right to a fair trial. Although review of the trial transcript shows numerous interruptions by the judge, Petitioner's argument fails. As found by the Michigan Court of Appeals, Petitioner did not show that the court was biased or that its remarks "unduly influenced the jury such that [Petitioner] was denied a fair trial." *People v. Whitman*, 2006 WL 287861, *8 (6th Cir., Feb. 7, 2006).

Further, Petitioner makes no showing that any interruptions or interjections violated the Constitution. Instead, he merely speculates that the interruptions created the "possibility that the jury's suspicions were raised concerning" Petitioner's defense. (Petitioner, page 35.) Without more, there is no ground for federal habeas relief.

## C. Claims Raised in Motion for Relief from Judgment

Petitioner's remaining claims were not presented to the state courts during his appeal of right. Instead, these claims were first presented to the trial court in his Motion for Relief from

12

Judgment. The trial court denied that motion pursuant to Michigan Court Rule 6.508(D)(3), finding that Petitioner had failed to demonstrate the requisite "good cause" or prejudice for failing to have raised them previously. The state appellate courts, using the form order citing to Rule 6.508(D), denied relief.

Respondent asserts that Petitioner's claims are procedurally defaulted because he failed to raise them on direct appeal. Procedural default occurs "[w]hen a habeas petitioner fails to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state-court remedies are still available or due to a state procedural rule that prevents state courts from reaching the merits of the petitioner's claim." *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000) (citation omitted). A claim that is procedurally defaulted may not be considered by a federal habeas court. *Id.*

Three elements must be satisfied before a claim may be considered to be procedurally defaulted:

> (1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture in an "adequate and independent" state ground foreclosing review of a federal constitutional claim.

*Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). Michigan Court Rule 6.508(D) rule provides in part that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, unless defendant makes a showing of good cause for the failure to raise such grounds previously and of resultant actual prejudice. In *Guilmette v. Howes*, though, the Sixth Circuit held that the form order used by the Michigan Supreme Court to deny leave to appeal is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to procedural default or a rejection on the merits. 624 F.3d

286, 291-92 (6th Cir. 2010) (en banc). Under *Guilmette*, this Court must "look through" the unexplained order of the Michigan Supreme Court—and the identical order used by the Michigan Court of Appeals—to the state trial court's decision to determine the basis of the denial of state post-conviction relief.

Here, the state trial court denied relief on procedural grounds. Citing MCR 6.508(D)(3), it concluded that Petitioner had failed to demonstrate good cause and actual prejudice on the basis of his claim of ineffective assistance of appellate counsel. Specifically, the trial court noted:

> [Petitioner] contends [that] his appellate counsel was ineffective by failing to raise [Petitioner's] current issues on direct appeal. This contention is without merit[] because the appellate counsel's decision to winnow out weaker arguments and focus on those more likely to prevail is not evidence of ineffective assistance. This Court will not second[-]guess the strategies appellate counsel employed. The record clearly reflects that the constitutional rights afforded to [Petitioner] under the United States and Michigan Constitutions have been protected. Furthermore, [Petitioner's] argument fails because [he] cannot show any possible prejudice from appellate counsel's decisions. Defendant was afforded a fair trial and full appeal.

(Opinion denying Motion for Relief from Judgment, doc. # 1-3, page 5; internal citations omitted.) As a result of the trial court's denial on procedural grounds, Petitoner's third through seventh claims are procedurally defaulted.

A state prisoner who fails to comply with a state's procedural rule waives the right to federal habeas review absent a showing of cause for non-compliance and actual prejudice resulting from the alleged constitutional violation or a showing of a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Petitioner asserts ineffective assistance of appellate counsel as his cause to excuse default. (Petition, Third Claim for Relief.) In order to show ineffective assistance of counsel, Petitioner must show that his counsel's

14

performance was deficient and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). To determine whether counsel's performance was deficient, this Court must determine as follows:

> . . . whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance . . . . At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland*, 466 U.S. at 690. Judicial scrutiny of counsel's performance is thus "highly deferential." *Id.* at 689. The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

A criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). Truly, "the hallmark of effective appellate advocacy" is the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52) (internal quotation marks omitted)). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).

Petitioner fails to show that his appellate counsel's performance fell wide of the range of professionally competent assistance. Appellate counsel presented legitimate issues on direct

appeal. Moreover, none of the claims presented in the motion for relief from judgment are the kind of claims that are obvious from the trial record and would have resulted in reversal on appeal. *See Meade v. Lavigne*, 265 F.Supp.2d 849, 870 (E.D. Mich. 2003). Notably, the trial court, under the MCR 6.508 directive, found that the claims lacked merit under the prejudice portion of the cause-and-prejudice test. Because Petitioner fails to demonstrate that appellate counsel was ineffective he cannot establish cause to excuse his procedural default.

Last, Petitioner has not demonstrated that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). Such a claim of innocence requires a petitioner to support the allegations of constitutional error with reliable evidence that was not presented at trial. *Sclup v. Delo*, 513 U.S. 298, 324 (1995). Actual innocence means *factual* innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998) (emphasis added). Petitioner does not make such a showing. Therefore, these claims are barred by procedural default, and they do not warrant habeas relief.

Finally, in his traverse (or reply brief) in support of his petition, Petitioner, for the first time, alleges that the Detroit Crime Lab's failure "to preserve and analyze evidence might have played a vital role in his conviction . . . ." ("Petitioner's Answer in Opposition to the Respondent's Answer," doc. # 10, page 20.) A traverse or reply to an answer to a habeas petition is not the proper pleading for a habeas petitioner to raise additional grounds for relief. *Cacoperdo v. Demosthenes,* 37 F.3d 504, 507 (9th Cir.1994). A court cannot consider new issues raised in a traverse or reply to the State's answer because the claim has not been exhausted in the state court. *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005). Further, even if it were

properly before this Court, Petitioner offers only speculation as to how any acts or omissions by the Detroit Crime Lab would be relevant to his case.

> . . . [I]f evidence now exist[s] that shows definitively that it is more likely than not that [Jermaine] Davenport murdered Mr. Wilson, that Davenport was somehow involved in both shooting incidents, and that the petitioner was not involved in Davenport's manufactured carjacking and assault to advert the police attentions [elsewhere], it would in fact be a fundamental miscarriage of justice if the petitioner was compelled to remain incarcerate[d] for Davenport's crimes without further proceedings to determine whether the Detroit Crime Lab contributed to his conviction and allowed a guilty man to go free.

(Petitioner's Reply, doc. #10, page 21.) The problem with Petitioner's argument is that is dependent upon several layers of supposition: *if* evidence exists, *if* that evidence is related to Davenport, *if* that evidence related to Davenport is connected to either Wilson's murder or Davenport's shooting, and *if* that evidence would exculpate Petitioner. Too many leaps are required for this claim to rise above the amorphous level of guesswork. As a result, even if this claim were before the Court, it fails.

### IV. CERTIFICATE OF APPEALABILITY

A petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues

presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)(citation omitted). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id*. at 336-37. The Court concludes that jurists of reason would not find the Court's assessment of Petitioner's claims debatable or wrong. The Court thus declines to issue Petitioner a certificate of appealability.

## V. CONCLUSION

Based on the foregoing, the petition for a writ of habeas corpus is **DENIED.** It is further ordered that a Certificate of Appealability is **DENIED.**

        **/s/ Peter C. Economus**  
        **PETER C. ECONOMUS**  
        **UNITED STATES DISTRICT JUDGE**